## Evans's Estate.

*Parent and child—Adoption—Adoption by deed—Acts of May 4, 1855, P. L. 430, and April 2, 1872, P. L. 31.*

1. The Act of April 2, 1872, P. L. 31, showed a legislative intent to give to adoption by deed duly executed and recorded, the same force and effect as the record of an adoption in the mode provided in the Act of May 4, 1855, P. L. 430; but it seems that no adoption by deed is complete until the deed of adoption has been recorded.

2. Where a husband and wife, by writing, agree to adopt a child and to support, maintain and educate it until the child arrives at the age of eighteen years, but without any covenant to give to the infant all the rights of a child including the right of inheritance, the writing will not operate as an immediate and complete adoption of the child as an heir.

Argued March 7, 1911.   Appeal, No. 22, March T., 1911, by Lillian Bevan, from decree of O. C. Lackawanna Co., No. 524 of 1906, dismissing exceptions to adjudication in estate of Thomas W. Evans, deceased.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Exceptions to adjudication.  Before SANDO, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*H. A. Knapp* of *Warren, Knapp & O'Malley,* for appellant.—The appellant, Lillian Bevan, became the adopted child of Thomas Evans and Elizabeth Evans, his wife, under and by virtue of a deed of adoption: Ballard v. Ward, 89 Pa. 358; Peterson's Est., 212 Pa. 453; McCully's Est., 8 W. N. C. 14; McCann's Est., 9 Pa. Dist. Rep. 184; Gratz v. Motz, 17 W. N. C. 190; Luccareni's Est., 31 Pa. C. C. Rep. 654.

*J. H. Oliver,* with him *T. H. Atherton* and *D. R. Reese,* for appellee.—We respectfully contend that there is not, and never was, under the common law of England, or of this state, a common-law deed of adoption: Ballard v. Ward, 89 Pa. 358; McCully's Est., 8 W. N. C. 14; Gillingham v. Ford, 12 Pa. Dist. Rep. 302.

An agreement to adopt a child and provide for her until she arrives at the age of eighteen years is not such a deed as is contemplated by the act of 1872: McCulley's Est., 8 W. N. C. 14.

OPINION BY RICE, P. J., July 13, 1911:

The appellant claimed the entire personal estate of the decedent as an adopted child.  This claim was based exclusively upon a writing, under seal, executed by her mother and her grandmother and the decedent and his wife, in 1884.  The instrument was not acknowledged. It begins with the words, "Whereas I, Alice Lewis," and after reciting the circumstances and date of the birth of her child, proceeds as follows, "not feeling able to care for and maintain said female child as it should be, therefore she hereby agrees by and with the advice and consent of her widow mother, the grandmother of said infant, has given and by these presents doth give, and release all

claim to said female infant child now and forever, to Thomas W. Evans and Elizabeth, his wife, who, by signing this agreement, agrees to adopt, receive, care for in sickness and in health, and to pay all doctors' bills, and to provide said child with food, and clothing, and education, books and the privilege of schools, and a good moral training at their and each of their expense without expecting to receive any help from me, or my mother, for so doing, or in no case are they to throw said child upon the Poor Board or claim anything from charity for to assist them to maintain the said child while they or either of them shall live, while they have anything for themselves, until the said child shall arrive at the age of 18 years, is to have a home with the said Thomas Evans or his wife, or either of them, and they further agree not to abuse or to overtax her with work while under said age; to love, cherish and respect her, and teach her to respect them, and all others to whom respect is due. Hoping and believing that they will do all these things, I, Alice Lewis, and Elizabeth Lewis, grandmother of said child, do release and consign to the care and keeping the said child to be theirs, and to be called after their name, without any objection from me forever or while they both shall live under the penalties of the law.".

While the adoption of children is a practice which was recognized by the civil law from its earliest date, it was unknown to the common law of England and exists in the states of the Union solely by virtue of statute: 1 Cyc. of Law and Procedure, 917. Numerous decisions from many states support this statement, and, amongst them, Ballard v. Ward, 89 Pa. 358, where Chief Justice SHARSWOOD said: "It never was in the power of an individual, by the common law of England or this state, to adopt the child of another as his own until the Act of Assembly of May 4, 1855, P. L. 430, by the seventh section of which it was authorized by decree of the court of common pleas of the county where the person desirous of adopting such child may be resident." That case was decided in 1879,

and as it involved the validity and effect of a sealed agreement, executed in 1863, by an uncle to adopt his niece, which was consented to by the father by contemporaneous writing under seal, the case must be regarded as authoritatively deciding that prior to, and independently of, the Act of April 2, 1872, P. L. 31, there could be no legal adoption of children in Pennsylvania by deed merely. But that act declared "that in all cases heretofore, as well as hereafter, where the common-law form of adopting a child by deed has been practiced or done, it shall be lawful, on proof of due execution of the deed, to have the same recorded in the proper office for the recording of deeds, in the county where the adopting parent resides at the date of its execution; and a duly certified copy thereof shall be received in evidence, with the same force and effect as the record of adoption would have in the mode provided in the act to which this is a supplement." Whilst the legislature would seem to have been mistaken in assuming that there was a common-law form of adopting a child by deed, this fact does not destroy the force of the other words of the statute, which tend to show a legislative intent to give to adoption by deed duly executed and recorded, the same force and effect as the record of an adoption in the mode provided in the act of May 4, 1855. This construction has some support in the fact that, although the question was legitimately before the court in Ballard v. Ward, and in Wallace's Est., 218 Pa. 39, the court did not declare that the act was wholly inoperative by reason of the mistaken assumption of the legislature, the decision in the former case being put upon the ground that the retroactive provision of the act was inoperative, and in the latter case upon a construction of the deed. Moreover, in Peterson's Est., 212 Pa. 453, the court said: "No action by any court appears to be absolutely essential to a valid and lawful adoption. The Act of April 2, 1872, P. L. 31, recognizes adoption, by deed; and provides for the recording of the deed and a certified copy as evidence." See also Phillips's Est., 17 Pa. Superior Ct. 103.

Granting, then, that there may be a legal adoption by deed, is the adoption complete without recording of the deed? There is no authoritative Pennsylvania decision directly on the point. But in other jurisdictions where the statutes require that the instrument of adoption be recorded, it is held that the act is not complete until such condition is complied with: Tyler v. Reynolds, 53 Iowa, 146. This was held, also, in a case where the instrument was almost entirely destroyed by accident soon after it was executed, by reason of which it became impossible to record it: Gill v. Sullivan, 55 Iowa, 341. It was held in the same state that the instrument should be recorded while the child is a minor: McCollister v. Yard, 90 Iowa, 621; and in the lifetime of the adopting party: Shearer v. Weaver, 56 Iowa, 578. In Tyler v. Reynolds, the court said: "In the case at bar the instrument was incomplete until filed for record. Between the parties no rights were acquired until this was done, and neither was bound until then. Before this was done Philo Reynolds died, and no one had the power and authority to do what he failed to do, or to do what was required to be done to render the instrument valid or obligatory. Upon his death his natural heirs inherited. Their rights became vested, and could not be prejudiced by filing the instrument for record after that time. It is true the statute does not declare by whom it shall be so filed, but by whoever done it is in the nature of a delivery of the instrument, and from that time binding on both. But there could be no such delivery as to Reynolds after his death." It will be noticed that, in the present case, the appellant was born on September 6, 1884; that the instrument was executed on November 22 of the same year; that the decedent died September 23, 1906, his wife having died before him; and that the instrument was proved by a subscribing witness and recorded on September 27, 1906. It would seem, from the words of the act of 1872, that recording of the deed was deemed necessary in order to make the adoption complete. Moreover, the legislature

EVANS'S ESTATE. 201

was dealing with a mode of adoption which should be the equivalent of an adoption by proceedings in court, of which a public record is made, and where the recording of the deed is postponed for twenty-two years, and until after the alleged adopting party is dead, it is difficult to conclude that the act of adoption became complete so as to prevent his estate vesting, at his death, in his natural-born heirs.

But without positively deciding the point, and granting that recording is not absolutely essential, we come to a consideration of the construction and effect of the instrument. Several cases outside of Pennsylvania are cited in the opinion of Judge Over, in Susman's Est., 45 Pitts. Leg. Jr. 101, as sustaining the proposition that, although an alleged adoption be invalid because of non-compliance with statutory requirements, yet the attempted adoption may be given effect upon the death, intestate, of one of the adopting parents, on the ground of a contract to leave his property to the child, where the contract has been performed by the latter by rendering the services due from a child to his parents. We need not express an opinion as to the principle upon which those cases were decided, for there is no evidence to bring this case within it. Outside the instrument itself, the evidence is silent as to the situation of the parties at the time it was executed and as to their actual or ostensible relations to each other thereafter. It is clear, therefore, that, if there was not a legal adoption by virtue of that instrument, the appellant's claim to the estate of the decedent must fail. The cardinal fact in the adoption of a child is the intent of the adopting parent: Peterson's Est., 212 Pa. 453. Hence, the effect of the instrument in question is not to be determined alone by the language of the mother of the child, however broadly and unmistakably that may express an intent to surrender her rights. The words expressive of the intent of the other parties are in their primary sense promissory, and it needs no argument to show that a mere executory agreement to adopt, without

more, is not an adoption. Further, it could scarcely be claimed that, if the word "adopt" had not been incorporated in their part of the agreement, the other words would import an agreement to adopt. This word is not conclusive of the whole question, but is to be interpreted in the light of the immediate context: Wallace's Est., 218 Pa. 39. The context tends to show that the decedent and his wife did not intend to take upon themselves all the obligations of parents and to give to the infant all the rights of a child, without limitation as to time, but intended to restrict the rights and obligations of both to the period terminating with her arrival at eighteen years of age, or, according to the broadest words used, while either of the two other parties should live. We do not say that it was absolutely essential that they should agree or declare, in so many words, that she should inherit from them as if she were their natural-born child, but only that the words of the instrument tend to show that they did not intend, in the event of their dying intestate, that she should have the right of a natural-born child in their estate. To say the least, their intention to adopt her in the future as their heir is not clear; much less clear and free from doubt is their intention that the paper they executed should operate as an immediate and complete adoption of her as their heir. It has been said that whereever the terms of an agreement are equivocal and doubtful, the interpretation by the parties is entitled to great if not controlling influence: Straus v. Wanamaker, 175 Pa. 213. But, as already pointed out, the evidence does not disclose any extraneous facts which throw light upon the intention of the parties, unless they be the facts that the instrument was not acknowledged and was not recorded until after the appellant's arrival at majority and the death of the decedent and his wife. These facts, if they have any significance at all in the construction of the instrument, tend to negative the idea of an intention on the part of the decedent and his wife that the instrument should operate as an immediate and complete

adoption of the appellant as their heir. But leaving these facts out of view, we conclude that the court was right in holding that it did not confer upon the appellant any right of inheritance.

The decree is affirmed and the appeal dismissed at the costs of the appellant.