## In Re: Adoption of Elizabeth McCann.

Argued December 8, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*William A. Gray,* for appellant.—The repeal of statutes by implication is not favored, and, unless a statute is repealed in expressed terms, the presumption is always against an intention to repeal if there is not an irreconcilable repugnancy between the provisions of the two Acts. Feils Adoption, 6 District & County Reports, 529: Provident Life & Trust Co. v. Klemmer, 257 Pa. 91; In re Appeal from Ordinance of the City of Pittsburgh, 99 Pa. Superior Ct. 467; Commonwealth, ex rel. Matthews v. Lomas, 302 Pa. 97.

*James P. Costello, Jr.,* and with him *James J. Welsh,* for appellee.—A general statute does not repeal a special statute unless the purpose to do so is clearly manifest. Commonwealth v. Moore, 255 Pa. 402; Commonwealth v. Reese, 293 Pa. 398.

OPINION BY GAWTHROP, J., March 5, 1932:

April 24, 1930, James J. Byrnes and Edith R. Byrnes, his wife, citizens of this Commonwealth, residing in the City of Philadelphia, petitioned the municipal court of Philadelphia County, for leave to adopt Elizabeth McCann, a minor child born to one Mildred V. McCann in the Saint Vincent's Hospital for Women and Children, in the City of Philadelphia, on November 12, 1928. The petition set forth that the father of the child was unknown; that the petitioners had the custody and care of the child and were then supporting her; that the mother of the child left her with Saint Vincent's Hospital and executed a surrender

of the child, which was attached to the petition. The hospital joined in the petition. The writing signed by the mother, referred to in the petition as a surrender of the child, was executed February 8, 1929, when the child was less than three months of age. It stated that in consideration of a suitable place being found for the child in a good family, the mother engaged to give up the child to the managers of the institution, to be placed as they might "judge best or for adoption into a good family, and in the case of the latter I now agree that I will not seek to recover, molest or deprive them of the child, but that I will rely upon the sisters and managers to dispose of her as they may judge best for her good, and I now agree to give up to them fully and unreservedly." Upon consideration of the petition and the affidavits thereto attached, the prayer was granted and a decree of adoption was entered. On May 19, 1931, the mother of the child filed a petition in the municipal court to vacate and annul the decree of adoption on the ground that she had no notice of, and did not by word or act consent to, the proposed adoption. After the filing of answers and a hearing, the court below entered a decree vacating and annulling the decree of adoption on the ground that the petition did not contain such evidence of the consent of the mother as was required by the statutes, and that, therefore, the court had no jurisdiction to make the order. This appeal by Edith R. Byrnes followed.

During the oral argument this court raised the question whether, since the passage of the Act of April 4, 1925, P. L. 127, the municipal court of Philadelphia County has jurisdiction in adoption proceedings, and counsel were directed to file briefs covering that question. We consider it first. The Act of 1925 is entitled "An act relating to adoption." It provides "That it shall be lawful for any adult citizen of this Commonwealth, residing therein, desirous of adopting

any person, either a minor or an adult, as his or her heir, or as one of his or her heirs, to present his or her petition to the orphans' court ...... of the county where he or she may be resident, declaring such desire." It provides what shall be set forth in the petition and that the petition "shall embody or have attached thereto the consents in writing of the person or persons whose consent to the proposed adoption is necessary as hereinafter provided." Then follow provisions as to what consents are necessary to adoption. The procedure subsequent to the presentation of the petition, including the duties of the court in conducting hearings and determining the issue, is prescribed. It is provided that when the decree of adoption is entered it shall be filed and spread at length upon the records of the court and shall be sufficient evidence of the adoption and shall be open to the public; and that all papers pertaining to the case and the testimony written out shall be kept in the files of the court as a permanent record thereof. The following acts and parts of acts of assembly are expressly repealed: Section 7 of Act of May 4, 1855, P. L. 430; Act of April 2, 1872, P. L. 31; Section 10 of Act of June 11, 1879, P. L. 142; Act of May 19, 1887, P. L. 125; Act of May 9, 1889, P. L. 168; Act of July 2, 1901, P. L. 606; Act of April 22, 1905, P. L. 297; Act of June 1, 1911, P. L. 539; and Act of May 28, 1915, P. L. 580. It is provided also that "all other acts of assembly or parts thereof that are in any way in conflict or inconsistent with this act, or any part thereof, are hereby repealed." The act became effective July 1, 1925.

As pointed out by Chief Justice Moschzisker in Thompson's Adoption, 290 Pa. 586, 590, "the subject of adoption has always been in the hands of the Legislature. There is no such thing as adoption in the English common law (Ballard v. Ward, 89 Pa. 358,

362; 1 C. J. 1371; Brown's Adoption, 25 Pa. Superior Ct. 259; Evans's Estate, 47 Pa. Superior Ct. 196), and prior to 1855, we had no general statute in Pennsylvania providing for such procedure.'' The Act of 1855 provided for the adoption of *children* and prescribed procedure. It said that ''it shall be lawful for any person desirous of adopting any *child* as his or her heir ...... to present his or her petition to *such court* in the county where he or she may be resident, declaring such desire ......; and such court, if satisfied that the welfare of such child will be promoted by such adoption, may with the consent of the parents or surviving parent of such child, or if none, of the next friend of such child or of the guardians or overseers of the poor, or of such charitable institution as shall have supported such child for at least one year, decree that such child shall assume the name of the adopting parent, and have all the rights of a child and heir of such adopting parent, etc.'' As stated in the Thompson case, the act did not name the courts of common pleas to exercise that jurisdiction. But in Ballard v. Ward, supra, the Supreme Court construed such court to mean the courts of common pleas. Section 10 of the Act of 1879 definitely recognized the courts of common pleas as vested with jurisdiction in adoption cases by authorizing that court to enter decrees of adoption of a minor child who had been deserted by its parents or surviving parent and had no legal guardian, in the manner provided by the Act of 1855 in the case of the death of the parents. The Acts of 1889, 1901 and 1911 also recognized the courts of common pleas as vested with this jurisdiction. The Act of 1887 merely amended the Act of 1855 by providing that a father or a mother in case of drunkenness or profligacy of the other parent may consent to the adoption of their children. The Act of 1905 further amended Section 7 of the Act of 1855 by providing

that if a child shall have been judicially committed to the care of any person or corporation, as being destitute, homeless, abandoned or dependent on the public, or having no parental care, or shall have been judicially so committed for certain other causes not here important, then the consent of the person or corporation having custody and control of the child *and* that of the non-neglecting or innocent parent alone, if one be living, shall be sufficient consent to confer jurisdiction. The Act of 1915 further amended Section 7 of the Act of 1855 by providing that the adopting parent and the child should respectively inherit and take by devolution from and through each other personal estate as next of kin and real estate as heirs under the intestate laws of the Commonwealth as fully as if the person adopted had been born a lawful child of the adopting parent. The Act of 1889, which was specifically repealed by the Act of 1925, had already been repealed by the Act of 1911, supra. The Act of 1911, unlike all the acts to which reference has been made, except the Act of 1925, related to the adoption of *adult* persons as heirs. By it jurisdiction was vested in the court of common pleas. The written consent of the person to be adopted had to be presented with the petition, as well as the written consent of the adult person's husband or wife, if such person be married. It provided further that if the parties so desired the person adopted should take and be known by the surname of the petitioner, and that the record of the court, or an exemplification thereof, should be sufficient evidence of the change of name. The Act of 1901 conferred jurisdiction on the common pleas to decree the adoption of children residing in the county in which application is made, by persons living in another state. All of the acts relating to the adoption of *children* (except the Act of 1901) provided that the court "decree that such child shall assume the name

of the adopting parent.'' Although jurisdiction in adoption proceedings ''did not innately belong to the common pleas and there was and is nothing in the law to compel the Legislature to place it there'' and ''the right to decree adoptions might with equal propriety have been conferred in 1855 on the orphans' court, instead of on the common pleas'' (Thompson's Estate, supra), the common pleas was treated by the Legislature as having exclusive jurisdiction thereof, with the single exception about to be noted, until the passage of the Act of 1925.

By the Act of May 11, 1923, P. L. 201, amending Section 10 of the Act of July 12, 1913, P. L. 711, establishing the municipal court in the County of Philadelphia and prescribing its jurisdiction, it was provided, inter alia, that the municipal court ''shall also have jurisdiction in adoption proceedings.'' The Act of 1913 did not confer that jurisdiction. The decree of adoption in the present case was entered by authority of the jurisdiction conferred on the municipal court by the Act of 1923, and after the passage of the Act of 1925. The Act of 1923 was not specifically repealed by the Act of 1925. The precise question then is whether the former act, so far as it vested the municipal court with jurisdiction in adoption proceedings, was repealed by implication. It is unnecessary for us to make an elaborate restatement of the rules to be applied in determining whether a statute is repealed by implication. They may be found in 25 R. C. L. p. 914, et sec., Sections 167, 172. ''It is always a question of the legislative intent. The presumption, of course, is that the statute expresses the full intent, and when, therefore, it is sought to extend the provisions beyond what their words express, the extension must appear by strong, if not by necessary, implication to be within the actual intent. It is in aid of the discovery of such intent that the principle is applied, that

a merely affirmative statute shall not be held to repeal a previous one, if by fair and reasonable construction both can stand consistently together. Where, however, the intent of the later act is clear, no repugnancy to a prior one will authorize a construction against such intent'': Rodebough v. P. T. Co., 190 Pa. 358. It is elementary that repeals by implication are not favored and that a repeal will not be implied unless there be an irreconcilable conflict between the two statutes ''and especially does this rule apply where the prior law is a special act relating to a particular case or subject, and the subsequent law is general in its operation'': Petri v. F. E. Creelman Lumber Co., 199 U. S. 487, 50 L. Ed. 281. A general affirmative statute will not repeal a previous particular statute upon the same subject though the provisions of the former be different from those of the latter: Com. ex rel. Schrier v. Ruggles, 280 Pa. 568. There is another canon of statutory interpretation, namely, that subsequent statutes intended as a revision of the whole subject matter and as substitutes for the prior legislation operate to repeal former acts dealing with the same subject, although there is no repealing clause to that effect: Graham v. Phila., 288 Pa. 152; Com. v. Curry, 285 Pa. 289; 25 R. C. L. 924.

In the light of these canons of construction in aid of discovery of the legislative intent, we turn to the two statutes for the purpose of determining whether they can ''stand consistently together.'' There would seem to be no doubt that the legislature intended the general act of 1925 as a revision of and substitute for all the existing general acts regulating the adoption of children and adults. In passing this general act to regulate the entire subject-matter and substitute for a number of detached and varying enactments one uniform rule, the lawmakers inserted in the new statute regulations and requirements which did not ap-

pear in any of the earlier statutes which were specifically repealed. For example, the provisions of Section 1 of the Act of 1925 that the petition for adoption of a person over twelve years of age shall embody or have attached thereto the written consent of the person to be adopted, and of said person's husband or wife, if any, is a new requirement. So also is the provision that the written consent of the adopting parent's husband or wife shall be attached to the petition, unless they jointly adopt such child. None of the existing statutes regulating the adoption of children required the written consent of any person to be attached to or embodied in the petition. The Act of 1911, regulating the adoption of adults, required the written consent of the person proposed to be adopted and, if the person to be adopted was married, the written consent of the adult person's husband or wife to be presented with the petition. By the terms of the Act of 1925 these provisions as to consent are requisite in every case in which the person proposed to be adopted is over twelve years of age. Section 3 of the Act of 1925 provides, inter alia, that when the petition is presented a time for hearing shall be fixed not less than ten days from said presentation; that the adopting parent or parents and the person proposed to be adopted must appear in person and be examined under oath; and that the court or judge may make or cause to be made an investigation by some person or agency specifically designated by said court or judge to verify the statements of the petition and such other facts as will give the court full knowledge of the desirability of the proposed adoption. From these and other provisions in the act which might be mentioned, it is manifest that by the act the legislature intended to and did make a radical change in the requirements as to the contents of the petition in adoption proceedings, as well as in prescribing the duties of the court in

respect to the fixing of a time for hearing on the petition, and in prescribing the duties of the court in respect thereto. Moreover, the act also expressly repealed every prior act prescribing procedure in adoption cases. Therefore, if the Act of 1923, so far as it confers jurisdiction on the municipal court in adoption proceedings, is still in force, there is no statute specifically governing procedure in that court. The jurisdiction in adoption proceedings conferred on the municipal court by the Act of 1923 was the same jurisdiction that was then vested in the courts of common pleas of the Commonwealth. It is very clear that the Act of 1925 vested in the orphans' court all the jurisdiction in adoption proceedings which was then vested in the courts of common pleas. The crucial question is whether the orphans' court acquired in the County of Philadelphia only concurrent jurisdiction with the municipal court in adoption proceedings, or whether it acquired exclusive jurisdiction in such cases by reason of an implied repeal of the Act of 1923. After the most careful consideration we have reached the conclusion that the general act of 1925 was not intended to repeal the local act at all, and that the case comes within the reason of the rule of construction applied in numerous cases, that a general statute, without negative words, does not repeal a previous statute which is particular. See Rymer v. Luzerne County, 142 Pa. 108, and cases there cited; and Com. v. Reese, 293 Pa. 398. "It is against reason to suppose that the Legislature, in framing a general system for the State, intended to repeal a special act which the local circumstances of one county had made necessary": Brown v. Commissioners, 21 Pa. 37. The Act of 1913 establishing the municipal court for the County of Philadelphia, as amended by the Act of 1923, is a special and local law. We cannot attribute the omission of the Legislature to repeal specifically the Act

of 1923 to mere inadvertence. It appears that the Act of 1925 was drafted and presented to the Legislature by a commission appointed under the Act of July 11, 1923, P. L. 994, to study the laws relating to child welfare and to suggest revisions and amendments to the statutes of Pennsylvania which related to children. We cannot impute to the draftsmen of the Act of 1925, or to the Legislature which passed it, ignorance of the Act of 1923 conferring jurisdiction on the municipal court in adoption proceedings. ''The high functions of the Legislature forbid such a presumption, and inculcate the opposite'': Howard Association's Appeal, 70 Pa. 344. It seems to us that the failure of the draftsmen of the Act of 1925 to include the Act of 1923 among those cited for repeal discloses that they determined that the jurisdiction of the municipal court should not be interfered with. All the acts which are specifically repealed by the Act of 1925 relate to proceedings in the common pleas. The provision that ''all other acts or parts thereof that are in any way in conflict or inconsistent with this act, or any part thereof, are hereby repealed'' is ''an explicit recognition that those not inconsistent are to remain in force'' (Com. v. Reese, supra), and that the repeal is to be limited in its application to those acts which conferred jurisdiction on the court of common pleas in adoption proceedings and regulated the proceedings in that court. We are of opinion that the fact that all of the acts governing procedure in adoption cases were specifically repealed by the Act of 1925 is not an insuperable objection in holding that the municipal court retains the jurisdiction vested in it by the Act of 1923. The latter act did not prescribe the procedure in the municipal court, but as the jurisdiction conferred was the same as that exercised by the courts of common pleas in adoption proceedings, the municipal court adopted the procedure outlined in the acts governing

procedure in the common pleas. There would seem to be no sound reason why that court may not now follow the procedure prescribed by the Act of 1925 conferring jurisdiction on the orphans' court. We understand that the municipal court has adopted a rule to that effect. Our conclusion is that the general statute of 1925 did not repeal the special and local statute of 1923 conferring jurisdiction on the municipal court in adoption proceedings. This conclusion is in harmony with the rule thus stated in Endlich on Interpretation of Statutes, p. 212: "An act affirmatively giving jurisdiction to one court is not to be understood as ousting jurisdiction previously existing in another." The effect of the opposite interpretation of the Act of 1925 would be to disturb all adoption proceedings in the municipal court since July 1, 1925, of which, we have been informed, there were more than five hundred in the years 1929, 1930 and 1931.

The remaining question is whether the court below fell into error in vacating the decree of adoption. As stated above, it was vacated on the ground that the consent of the mother which was attached to the petition did not comply with the requirements of the statute and, therefore, the court had no jurisdiction to make the order. With that conclusion we cannot agree. The petition did not purport to contain the consent of the mother to the adoption. It averred that the mother left the child with the Saint Vincent's Hospital for Women and Children, and had executed a surrender of the child to the hospital. The only consent attached to the petition is that of the hospital. The writing signed by the mother, authorizing the hospital to place the child in a good family "for adoption" was not a consent made in this particular proceeding and did not satisfy the statute. The crucial question presented to the court below in the proceeding to vacate the decree of adoption was whether the consent of the hospital

was a sufficient consent in the circumstances; for the answer averred an abandonment of the child by the mother.

In Pennsylvania, from the passage of the Act of 1879 until the passage of the Act of 1925, a child who had been deserted by its parents, or surviving parent, and had no legal guardian, could be adopted by another person in the manner provided by law in the case of the death of the parents. Consent of the next friend, or of such charitable institution as shall have supported such child for at least one year, was sufficient. The Act of 1887 authorized the adoption when the parents, from any cause, neglected or refused to provide for the child for one year or upwards. The consent of a neglecting parent was not necessary, the consent of the next friend or of the charitable institution which had supported the child for one year being sufficient. Under these acts proof of the neglect or desertion of the child by the parents was a condition precedent to the entry of a decree of adoption based upon the consent of a representative other than a parent. By the terms of the Act of 1925, the consent of the mother of an illegitimate child to the adoption is sufficient; but even her consent is unnecessary if she had abandoned the child. The word "abandon" is defined by Webster: "To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely, to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert, as a person to whom one is bound by a special relation." In Booth v. VanAllen, 7 Phila. 401, it is defined: "To forsake entirely; to renounce and forsake; to leave with a view never to return." The definition in 1 C. J. 3 is: "To renounce all care or protection of; totally to withdraw ourselves from an object; to lay aside all care for it; to leave it altogether to itself." To us it

seems clear that the averment in the original petition that the mother left this child with Saint Vincent's Hospital for Women and Children and executed a surrender of the child, together with the agreement of "surrender" attached to the petition, constituted a sufficient averment of an abandonment of the child by the mother, and laid the ground for the entry of a decree of adoption based upon the consent of the charitable institution which had the legal custody of the child and had provided for it for more than one year.

The act specifically provides that "the consent of the parent who has . . . . . . abandoned the child is unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact." While the decree of adoption states that it was "entered upon consideration of the annexed petition and of the affidavit thereto attached," the judge made no specific finding of the consent of Saint Vincent's Hospital for Women and Children, nor of the abandonment by the mother; but if both those facts appear in writing in the record without denial or contradiction, the presumption of regularity requires us to conclude that the decree is based on a finding of those facts; or in the alternative, to find those facts in this court because the record supports them and nothing appears to the contrary. In addition, it is to be noted that the petition of the mother to vacate the decree of adoption does not deny or in any way impair the consent of Saint Vincent's Hospital, nor does she deny her abandonment of the child, or otherwise aver anything inconsistent with abandonment; on the contrary her petition explicitly recognized both facts by attaching as an exhibit, her written consent to the transfer of the custody of the child to the hospital, and her agreement "of my own free will to give up [the child] to

the managers of said institution to be placed as they may judge best or for adoption into a good family,'' ......; and she testified that she "intended ...... by signing the paper to give them [the hospital] authority to adopt the child.'' When a case is tried without a jury, this court has the power to find facts necessary to support a decree if the court below could or should have found them from the evidence: Leonard v. Smith, 162 Pa. 284, 288; Commercial Mtg. Corp. v. Waters, 280 Pa. 177, 180; General Purchase Corp. v. Bitomski, 102 Pa. Superior Ct. 266.

As the record shows a clear case within the statute for the adoption of the child, and as the only ground alleged for the vacation of the decree is without merit, the petition should have been dismissed. Order reversed, and decree reinstated; each side to pay its own costs.

President Judge TREXLER and Judges KELLER and STADTFELD would hold that the jurisdiction of the Municipal Court was divested by the Act of 1925.