IN THE MATTER OF THE ADOPTION OF FORCE BY
STIENS, ETC.

[No. 18,673.   Filed January 10, 1956.]

Rex E. Poe, of Jasonville, and Charles V. Livengood, of Richmond, for appellants.

Theodore P. Duning, of Lewisburg, Tennessee (formerly of Richmond), and Robert L. O'Maley, of Richmond, for appellees.

BOWEN, J.—The appellees, Ralph Stiens and Marjorie Stiens, the latter referred to hereinafter in this opinion and in the testimony in the court below as Margie Stiens, filed their petition in the court below for the adoption of one Carolyn Marie Force, alleging in such petition that such child was abandoned and deserted by the mother of said child, Mary Force, more than six months immediately preceding the filing of the petition. The prayer of said petition asked for an order of court for the adoption of such child as their ward and that the name of such child be changed to Carolyn Marie Stiens. No notice was issued on the petition to either parent of the child in question. However, the mother of such child, and appellant herein, voluntarily appeared and filed answer and in such answer asked that the petition of appellees be denied and that she had not and did not consent to the adoption of such child. The father of such child, William Force, after the cause had been taken under advisement and prior to the judgment, filed his written consent to the adoption.

The cause on the issues formed on appellees' petition and appellant's answer was submitted to the court for

trial and the court found for the petitioners and ordered that the said Carolyn Marie Force be adopted as the child of the petitioners, Ralph Stiens and Margie Stiens, and that the name of such child be changed to Carolyn Marie Stiens, and a due order and certificate of adoption was entered by the lower court. The appellant filed a motion for a new trial, the grounds of which motion were that the judgment, finding and decision of the court below was not sustained by sufficient evidence and was contrary to law. This motion was overruled and this appeal followed.

By the assignments of error and the issues formed in this appeal we are called upon to determine whether or not there is any evidence of probative value to support the lower court's decision that the mother of such child, Mary Force, abandoned or deserted her child for six months or more immediately preceding the date of the filing of the petition for adoption, and, therefore, whether the court was justified in dispensing with the necessary parental consent by reason of such abandonment.

From the undisputed evidence and the facts shown in the record before us, considered in the light most favorable to appellees, it appears that the judgment of the lower court was based upon a factual situation which was in substance as follows:

Carolyn Marie Force, the child sought to be adopted was the daughter of the appellant, Mary Force, who had lived with William Force in Greene County, Indiana, and bore him two children, an older boy and the daughter in question. William Force moved the appellant out of his home and to other quarters from which she moved to Jasonville, Indiana, shortly prior to the birth of Carolyn Marie Force. Some three months after the birth of Carolyn Marie Force, and in July, 1952, for the

purpose of seeking employment, Mary Force took such child with her and went to Richmond, Ind, to live in the appellees' home, the appellee, Margie Stiens, being a sister of William Force, the father. Some time thereafter Mary Force was able to obtain employment at a ten-cent store and then at the Atlas Underwear Company where she made approximately $30.00 per week. Mary Force lived at the home of the appellees together with Carolyn Marie Force for about three weeks. There is evidence in the record that the appellees did not consider that appellant gave such child the proper care and attention while she was there in the home with it, and that Mary Force let the appellees take care of the baby and its needs, and that Mary Force had stated she would not take the child away from them. From the period of July, 1952, until March, 1953, the appellant mother continued to live in Richmond, Indiana, and the mother visited with this child on occasions varying from once a week to two or three times a week during which time the appellees testified that she failed to pay proper attention to her baby and left the care of such child to others. Appellee, Margie Stiens, also testified that Mary Force did not contribute to the support of such child except for the purchase of a minor clothing item.

In October, 1952, Mary Force took her child, Carolyn, to Cincinnati, Ohio, for a visit and returned to the appellees' home a few days later and after Mary Force brought the child back to petitioners' home she continued such visits to their home and to her child. The appellant's work at the factory was reduced to three days per week and she returned to Jasonville in the Spring of 1953 where she acquired work at the Form-Fit Company and is now employed there. In April, 1953, and on the Saturday after Easter, the appellant mother went to the home of appellees and asked for her child

and her child's clothing and stated that she wanted to take the child to Jasonville, Indiana. On such occasion the appellee, Margie Stiens, admitted that she forcibly restrained Mary Force from taking her child from appellees' home and that the appellee, Margie Stiens, slapped the mother who was not permitted to take the child. Shortly thereafter, on the 16th day of April, 1953, the appellees filed this petition for adoption.

While adoption is a practice of antiquity with its main roots being nurtured under the Roman law, in England there is no provision for adoption at common law or under statute. In the United States adoption exists solely by statute and it is uniformly held in this country that statutes authorizing adoption are in derogation of the common law which made no provision for the adoption of children, and since in such proceedings natural parents are deprived of all their rights as such forever, such statutes must receive a strict construction. *Glansman* v. *Ledbetter* (1921), 190 Ind. 505, 130 N. E. 230; 2 C. J. S., Adoption of Children, §6, pp. 374, 375.

There seems to be a practical unanimity in the cases as to the definition of the word "abandonment" when used in an adoption statute, and that is, that abandonment exists when there is such conduct on the part of a parent which evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child for the time prescribed by statute; 2 C. J. S., Adoption of Children, §21, p. 388. The foregoing definition is supported by a long list of authorities cited in an exhaustive case note in 35 A. L. R. 2d 662-702 at page 665. The overwhelming weight of authority in the adjudicated cases supports a definition

which contains language expressive of a general idea that it is a complete and absolute relinquishment which constitutes abandonment. 35 A. L. R. 2d 666; *Re Rice* (1923), 179 Wis. 531, 192 N. W. 56; *Re Cody* (1915), 169 Cal. 150, 146 P. 532, 534; *Re Kelly* (1914), 25 Cal. App. 651, 145 P. 156; *Pitzenberg* v. *Schnack* (1932), 215 Iowa 466, 245 N. W. 713; *Re Bistany* (1924), 239 N. Y. 19, 145 N. E. 70; *Mastrovich* v. *Mavric* (1939), 66 S. D. 577, 287 N. W. 97; *Johnson* v. *Strickland* (1953), 88 Ga. App. 281, 76 S. E. 2d 533; *Re Harvey* (1953), 375 Pa. 1, 99 Atl. 2d 276; *Re McCann* (1932), 104 Pa. Super. 196, 159 Atl. 334; *Platt* v. *Moore* (1944), Tex. Civ. App., 183 S. W. 2d 682; *Jackson* v. *Russell* (1951), 342 Ill. App. 637, 97 N. E. 2d 584.

In addition to the decided cases which establish an unconfuted rule that to constitute abandonment conduct on the part of the parent must be shown which evidences a settled purpose to forego all parental duties and relinquish áll parental claims to the child, Webster defines the word "abandon" as meaning "to relinquish or give up with the intent of never again resuming or claiming one's rights in; to give up absolutely; to desert . . ." Webster's New International Dictionary, 2d ed., p. 2.

We are not unmindful of the existence of a criminal statute in this state which defines abandonment, and contains the following provision:

"Abandonment of a child shall consist in any of the following acts by any one having the custody or control of the child; (a) wilfully forsaking a child; (b) failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection; (c) failing to care for and keep the control and custody of a child so

"that the child shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chageable with its or their care, custody and control."

Sec. 10-813, Burns' 1942 Replacement (Supp.). However, such statute is criminal in nature providing punishment for the acts prohibited by statute. There is no such definition of abandonment contained within the adoption statute in this state, and the foregoing criminal statute makes no reference to the adoption statute. Since the adoption statute provides for a proceeding wholly unrecognized at common law, and therefore must be strictly construed, in the absence of legislative enactment providing for any definition of abandonment under such adoption statute, and since the aforementioned criminal statute contains no reference whatsoever to adoption proceedings, we must look to the common law for a definition of the meaning of the term "abandonment" as used in the adoption statute. Furthermore, in all good sense and reason any attempt to hold the foregoing criminal statute applicable to adoption proceedings would make a child subject to adoption without parental consent where such child had only been voluntarily and temporarily placed with relatives and who was receiving good care from such relatives, and would be directly contrary to all the decisions interpreting the adoption statute and the settled law on this question.

The rules in the adjudicated cases seem uniformly clear with reference to the essential elements to constitute an abandonment under the adoption statute. Some difficulty has arisen in a very small minority of the cases in the application of the legal definition of abandonment to the facts of the particular case. In the matter of determining whether there is an

abandonment such issue must not be confused with the matter of the determination of the custody of children. In the case before us, it must be determined from the record whether there is any evidence of probative value that the mother of this child had abandoned it, and until there is evidence from which the lower court could have reasonably concluded that such child had been abandoned, the court had no right to deprive the natural parent of her right to her child in the absence of her consent, or the making of such child a ward of the court. Before there is evidence adduced from which it could have reasonably concluded that such child had been abandoned, it was not proper for the lower court to make a comparison of homes or an application of the "best interests of the child" rule. Once that abandonment is shown then the only issue remaining is whether the proposed adoptive parents are fit and proper persons to be permitted to adopt and have the custody of the child.

Difficulty has arisen in cases in a few other jurisdictions where the court has confused the issues in cases involving the custody of children in which the "best interests of the child" rule applies and cases where the petition seeks to deprive the natural parent of her right to her child forever. A confusion of such issues in judicial decisions could lead to the arbitrary splitting up of families on the whims of a trial judge and the removal of a child from the mother who bore it simply because of her poverty or even a mode of life contrary to that of the trial judge before whom the petition was heard. Such a result would lead to serious consequences to the family relationship, the tie which unquestionably holds our society together, and to our established rules of justice and natural rights which have long been declared as a part of our common

law, and the rule which our courts have uniformly and consistently laid down that any legislative enactment in derogation of such common law must be strictly construed.

A slight confusion exists in a few cases, perhaps, by reason of some judicial impatience with the vagaries of parents during an era of a trend toward a welfare state, and the establishment of a governmental paternalism to a much greater degree over family relationships. Such decisions which fortunately are in a very small minority would by judicial construction give more and more power to public authorities and give to the state responsibilities which belong to private individuals and the family as a unit under existing statutes and long established rules of the common law which recognize natural rights that will always exist as long as there are just governments among men.

The facts of this case bring into focus a situation where the mother of a child who had been deserted by the father took the child with her to another city seeking employment, and with the child moved into the home of the sister of the father of the child for a short period of time while she was seeking employment, and later secured employment living away from the home, making visits of from one to three times a week to see the child, bringing it an article of clothing, later taking the child on a trip of several days to Cincinnati, then after the mother had returned to her former home by reason of her employment necessities she came back to the home where the child was being maintained and attempted to take the child with her and was forcibly restrained and slapped by the persons who now seek to become the adoptive parents. All of these matters occurred between the time the mother

first went into the home of the adoptive parents in July, 1952, and the date of the filing of the adoption petition, which occurred on April 16, 1953, which was a very short time after the mother was forcibly restrained from taking her child from this home. During all of this period the child in question was in the first two years of its life and was visited by its mother regularly.

The appellees urged in their brief that by reason of a subsequent lack of care or concern for the baby on the part of the mother during the time she was living with it in appellees' home and in her subsequent visits, and the fact that they saw fit to do more for the baby than the mother, that such facts would constitute evidence that could reasonably infer abandonment. We do not so construe the law in the adjudicated cases as to the facts which are necessary to show an abandonment, or that this conduct was sufficient to show that the mother, Mary Force, evidenced a settled purpose to forego all parental duties and relinquish all parental claims to the child. The appellees also urge that the fact that the mother on several different occasions wrote out a consent to adoption which she tore up without delivering it to the appellees was evidence tending to show abandonment. In our judgment the tearing up of such consents could only lead to the reasonable inference that the mother did not desire nor intend to abandon this child. The mother was more or less continuously from week to week in the presence of this child and the record is devoid of evidence from which inferences could be drawn that she forsook such child and relinquished all parental claims to it.

We are not here concerned with a question as to whether or not abandonment once complete could be revoked by a parent at any time prior to the filing of a

petition for adoption as that matter is not before us by reason of the fact that there is no original abandonment shown from the evidence in this record.

For the reasons given herein the judgment and decision of the lower court was not sustained by sufficient evidence and was contrary to law.

Judgment reversed with instructions for the lower court to sustain appellant's motion for a new trial and for further proceedings not inconsistent herewith.

## CONCURRING OPINION

KENDALL, J. concurs: I agree with the majority opinion in the result reached but for altogether a different reason.

The order of adoption made by the trial court contained the following provisions:

". . . and the court further finds that the Wayne County Department of Public Welfare has heretofore filed herein its report as to the proposed adoption of said child, and the court has duly examined the same and finds that, in said report, said department recommends the adoption of said child by the petitioners. . . ."

The report of the Welfare Department as referred to in the Order was not introduced into evidence, and, therefore, is not a part of the record. Under such conditions, I cannot overlook that portion of the Order which says, ". . . the court has duly examined the same . . . said department recommends the adoption of said child by the petitioners. . . .". I do not believe that this court can overlook the fact that the party opposing the adoption did not have the opportunity to cross-examine the member of the Welfare Department submitting the report to the court which was examined by the court as to the items therein concerned upon which the Welfare Department based their recommendations. Under

these circumstances, I do not believe it proper for the trial court to bolster the decision by an instrument which is foreign to the evidence of the cause.

It may well be that a report made by the Welfare Department in the course of their duties might include statements and other evidence which would not be properly admitted as evidence in the trial of the cause, thus resulting in an unfair trial. *People* v. *Lewis* (1932), 260 N. Y. 171, 183 N. E. 350; *Attkisson* v. *Usrey* (1946), 224 Ind. 155, 65 N. E. 2d 489.

For this reason, it is my opinion that the judgment should be reversed.

## Concurring Opinion

ROYSE, C. J. concurs:  I agree this case should be reversed, and think it could be done for either the reasons stated in the majority opinion or the reasoning of the concurring opinion by Kendall, J.

NOTE.—Reported in 131 N. E. 2d 157.