638 A.2d 1019

In re ESTATE OF John LISCIO, deceased.

Appeal of Kimberley A. SOMMA, Administratrix
of the Estate of John Liscio, deceased.

Superior Court of Pennsylvania.

Argued Nov. 10, 1993.

Filed March 17, 1994.

Ruth A. Zittrain, Pittsburgh, for appellant.

Raymond Radakovich, Pittsburgh, for participating party.

Before TAMILIA, HUDOCK and CERCONE, JJ.

HUDOCK, Judge:

Kimberley A. Somma, Administratrix of the Estate of John Liscio, deceased, appeals from the order sustaining the exceptions of Mary DiPerna to the estate's award of counsel fees and costs pursuant to 42 Pa.C.S. § 2503 as sanctions for the vexatious, arbitrary, dilatory, frivolous, and bad faith action of Ms. DiPerna and her counsel during the pendency of the underlying claim they had brought against the estate. We reverse.

On June 10, 1989, John Liscio died intestate, survived by his daughter, Sherilynn Liscio. Because Ms. Liscio resided in

Florida, she renounced her right to administer her father's estate. Thereafter, Mrs. Kimberley Ann Somma was appointed to administer· the estate. Letters of administration were duly issued to Mrs. Somma on June 15, 1989. On July 6, 1989, Ms. DiPerna, through her counsel, Raymond Radakovich,· Esquire, filed a petition for revocation of letters, requesting the court to remove Mrs. Somma as Administratrix of the Estate of John Liscio and substitute Ms. DiPerna, based on Ms. DiPerna's allegation that she was decedent's natural daughter. A rule was issued by the Register of Wills, and the administratrix defended on two bases: 1) that Ms. DiPerna was not the natural daughter of the decedent, and 2) that Ms. DiPerna had been adopted legally shortly after her birth by persons other than decedent or his former wife; thus, her right, if any, to administer and inherit under decedent's estate was terminated by reason of the adoption. *See* 20 Pa.C.S. § 2108. The petition to revoke the letters subsequently was withdrawn, when counsel for the estate agreed to give notice to Ms. DiPerna of the filing of an account and to permit the issue of Ms. DiPerna's right to inherit from the estate to be decided by the Orphans' Court following the filing of the account.

In accordance with that agreement, Ms. DiPerna was notified of the filing of the account, and she filed objections, again contending that she was an equal heir with Ms. Sherilynn Liscio in the estate by virtue of her status as a natural daughter to decedent. A hearing was held on her claim on July 11, 1990, where the following was established: Ms. DiPerna, adopted as a baby, decided in 1979 to discover the identity of her natural parents. Ms. DiPerna eventually found, met, and developed a relationship with her natural mother, who informed her that her natural father was the decedent. However, Ms. DiPerna never met decedent prior to his death.

At the hearing, Ms. DiPerna acknowledged that she was adopted, but contested the fact that she was adopted "legally". Specifically, Ms. DiPerna contended that, because her alleged father, John Liscio, had not been present at the adoption

proceedings, and because he had not been notified of the proceedings, her adoption was tainted. Ms. DiPerna alleges that it was not until sometime after the proceedings had been completed that John Liscio was informed of the adoption. Since Ms. DiPerna's adoption proceedings had never been made available for her review, she suggested that the estate could not sustain a finding that she was legally adopted. In 1979, Ms. DiPerna attempted to gain access to her adoption file by instituting an action against the children's home that handled her adoption. It is established in the record of this proceeding that, in the 1979 action, Ms. DiPerna averred that she was adopted on July 5, 1950, through the children's home. The Orphan's Court in this action had the adoption file, and, over Ms. DiPerna's protest, reviewed the adoption file *in camera*. Ms. DiPerna was shown the cover of the file, and the hearing was concluded.

On July 11, 1990, the Orphans' Court determined that Ms. DiPerna was adopted legally and dismissed her objections to the first and final account. Ms. DiPerna timely filed an appeal to this Court. This Court affirmed, 413 Pa.Super 661, 596 A.2d 257, and the Supreme Court denied Ms. DiPerna's petition for allocatur, 529 Pa. 621, 600 A.2d 537. Subsequently, the estate filed a motion for counsel fees and costs, pursuant to 42 Pa.C.S. § 2503, for Ms. DiPerna's dilatory, vexatious, arbitrary and bad faith actions in continuing to pursue a frivolous and meritless claim. This motion included Ms. DiPerna's attorney as a sanctionable party for his actions in promoting and proceeding with a claim he knew was frivolous, meritless, and against settled law. Briefs were prepared and argument was heard on December 20, 1991, by the Honorable Michael J. O'Malley. On April 9, 1992, the court ordered that Ms. DiPerna and/or her counsel, Raymond Radakovich, Esquire, reimburse the estate of John Liscio the sum of $15,563. Ms. DiPerna and her counsel filed exceptions, which were granted on January 21, 1993, after hearing oral argument by the Orphans' Court *en banc*, thereby reversing the award. This appeal followed.

On appeal, the estate raises the sole question of:

WHETHER THE ACTIONS OF APPELLEE AND HER COUNSEL IN THE UNDERLYING CASE WON BY THE APPELLANT FALL WITHIN THE DEFINITION OF FRIVOLOUS, VEXATIOUS, ARBITRARY, DILATORY AND BAD FAITH SO AS TO ENTITLE APPELLANT TO COUNSEL FEES AND COSTS PURSUANT TO 42 Pa.C.S.A. § 2503?

Appellant's Brief at p. viii.

■  The court may require a party to pay another participant's counsel fees if the party's conduct in commencing the action was "arbitrary, vexatious or in bad faith." 42 Pa.C.S. § 2503(9); *Brenckle v. Arblaster,* 320 Pa.Super. 87, 93, 466 A.2d 1075, 1078 (1983). Likewise, the court may require an award of counsel fees if the party's conduct during the pendency of the matter is dilatory, obdurate or vexatious. 42 Pa.C.S. § 2503(7). "Generally, if the record supports a court's finding of fact that the conduct of one party was in bad faith, an award of counsel fees will not be disturbed in the absence of an abuse of discretion." *State Farm Mutual Automobile Insurance Company v. Allen,* 375 Pa.Super. 319, 325, 544 A.2d 491, 494 (1988).

The estate argues that the record is replete with conduct which demonstrated that Ms. DiPerna's actions, as well as her counsel's, in instituting the within action and then proceeding through all the levels of the judiciary with the action, were arbitrary, vexatious and taken in bad faith. The estate contends that Ms. DiPerna and her counsel were well aware that Ms. DiPerna had been adopted, and that the law in this Commonwealth is absolutely and unequivocally clear that an adopted child cannot inherit from her biological parents. The estate thus concludes that because both statute and case law establish as black letter law that an adopted child cannot inherit from her biological parents, the fact that Ms. DiPerna and her counsel, nonetheless, chose to contest the distribution of the estate equates with the conduct necessary to recover counsel fees and costs pursuant to 42 Pa.C.S. § 2503.

Conversely, Ms. DiPerna and her counsel argue that their case was not without merit and that it was not vexatious, arbitrary or taken in bad faith. Rather, Ms. DiPerna and her counsel contend that the issue they pursued in all of the underlying proceedings had been consistent and legitimate, namely: whether, for purposes of intestate distribution of an estate, an adult individual, allegedly adopted at birth, may discover if the proper process and procedure was followed in her alleged adoption, thus testing the validity of the alleged adoption decree, with the possibility of having it declared void and enabling inheritance from the estate of the biological parent.

The Orphans' Court *en banc*, in reversing the award of counsel fees by the hearing court, found that Ms. DiPerna and her counsel did not act in bad faith by instituting the action against the estate, reasoning that, although Ms. DiPerna's chance of prevailing on her petition was slight, with little or no reasonable chance of success under the governing case law, because she considered her claim to be valid and because she pursued her legal remedy in good faith, her actions failed to rise to the level of "vexatious" conduct sufficient to qualify the estate relief under 42 Pa.C.S. § 2503. The court *en banc* held that Ms. DiPerna's litigation was no more vexatious or frivolous than those of her historically significant predecessors which reversed the existing state of the law and which had been precipitated by a challenge to the *status quo, e.g., Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (striking down racial discrimination in public education); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (extending constitutional protections to a woman's right to an abortion); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (establishing a defendant's right to counsel throughout the appellate process). Moreover, the court *en banc* found that with the evolution of the law in the areas of inheritance by an adopted person from his natural parent's estate, and the notice and consent necessary of a natural father for adoption of a child out of wedlock, Ms. DiPerna's claim was a valid attempt to prove her entitlement

to a portion of the decedent's estate. We, however, find the court *en banc*'s analysis untenable under the factual scenario of this case.

After carefully reviewing the record in this matter, we find the hearing court's award of attorney fees to have been proper, as there exists a basis in the record for a finding of arbitrary, vexatious, and bad faith conduct as required by 42 Pa.C.S. §§ 2503(7) and (9) on the part of Ms. DiPerna and her counsel. It has repeatedly been held that, "the intent of the rule permitting the recovery of counsel fees is not to punish all of those who initiate actions which ultimately fail, as such a course of action would have a chilling effect upon the right to raise a claim." *Dooley v. Rubin*, 422 Pa.Super. 57, 64, 618 A.2d 1014, 1018 (1993), *citing Santilo v. Robinson*, 383 Pa.Super. 604, 557 A.2d 416 (1989). "Rather, the aim of the rule is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party." *Id.* In this instance, Ms. DiPerna and her counsel filed an action against the estate of her alleged natural father, with the knowledge that Ms. DiPerna had been adopted, and that the law prohibits adopted children from recovering from their natural parents' estates. Moreover, we find Ms. DiPerna's contention that she had a viable claim due to her adoption being tainted, specifically that her father allegedly did not receive notice of the adoption proceedings nor give his consent to the adoption, to be completely devoid of merit. The law, at the time of Ms. DiPerna's adoption, clearly stated, "[i]n the case of an illegitimate child, the consent of the mother *only* shall be necessary." 1 Pa.S. § 2(c); June 30, 1947, P.L. 1180, § 2, entitled Consents necessary to adoption. (emphasis added) *See also, In re McCann's Adoption*, 104 Pa.Super. 196, 159 A. 334 (1932); *Adoption of Uhler*, 29 North. 76 (1944). Thus, the law at the time of Ms. DiPerna's adoption was clear that the father of an illegitimate child need not be given notice of the adoption, as his consent was not required to effectuate same. If Ms. DiPerna's claim would have merely been weak and subse-

quently found devoid of merit, it would not necessarily have equated with conduct that is arbitrary, vexatious or in bad faith. However, because Ms. DiPerna's claim had no reasonable possibility of success, coupled with her prolonging litigation and unnecessarily delaying distribution of the estate, as well as costing the estate thousands of dollars in attorney fees, we find that such conduct is the conduct envisioned by 42 Pa.C.S. § 2503 permitting an award of attorney fees. Accordingly, we find that the court *en banc* abused its discretion by granting Ms. DiPerna's exceptions and vacating the award of counsel fees and costs.

■ Next, we must determine whether Ms. DiPerna's counsel can be held jointly and severally liable for the judgment. For the following reasons, we find that he may. In *Simmons v. City of Philadelphia*, 80 Pa.Cmwlth. 354, 471 A.2d 909 (1984), the Commonwealth Court held that the trial court had properly awarded counsel fees against the defense attorney for vexatious conduct, pursuant to 42 Pa.C.S. § 2503, in the city's actions in assumpsit for delinquent wage taxes, where the attorney continued to assert previously adjudicated and rejected defenses. Although *Simmons* is not of precedential value, we find the reasoning therein to be persuasive. In *Simmons*, the court stated:

Section 2503(7) of the Judicial Code, 42 Pa.C.S. § 2503(7), provides that counsel fees may be awarded ... "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter" and Section 102 of the Judicial Code, 42 Pa.C.S. § 102, defines a participant as "[l]itigants, witnesses and their counsel." Hence Section 2503(7) permits the award of counsel fees against an attorney....

Also, Section 2503(9) of the Judicial Code, 42 Pa.C.S. § 2503(9), authorizes the award of counsel fees against a party "because the conduct of ... [the] party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." The definition of party at Section 102 of the Judicial Code, 42 Pa.C.S. § 102 "includes counsel [ ] for such

a person who is represented by counsel." [citations omitted.]

*Id.* at 358, 471 A.2d at 911. Based on these sections of the Judicial Code, we find that counsel fees were appropriately awarded in the within action against Ms. DiPerna *and* her counsel, jointly and severally. Counsel was aware of the fact that Ms. DiPerna had been adopted, and knew or should have known that notice to the natural father of the adoption of his illegitimate child was unnecessary in 1950. Thus, to continually attempt to argue against well-settled case law, and to attempt to apply retroactively the present law to an adoption in 1950, was clearly a frivolous, as well as a bad faith attempt by counsel to alter the state of the law at the expense of the Liscio estate. We note, however, that this finding should not be construed as disfavoring legitimate attempts to change existing law. Where long-standing case law is contrary to a party's position, there may be a reasonable basis for arguing the re-evaluation of that law. We merely find .this not to be such a case, as Ms. DiPerna's counsel could not have reasonably believed that the courts of this Commonwealth would be persuaded to change well-settled law concerning the inheritance of an adopted person, especially when the adoption occurred in accordance with the laws at the time of the adoption.

Order of the Orphans' Court sitting *en banc* sustaining exceptions filed by Mary DiPerna and Raymond Radakovich, Esquire, is hereby vacated, and the judgment of the Orphans' Court is hereby reinstated. Jurisdiction relinquished.

CERCONE, J., files a concurring statement.

CERCONE, Judge, concurring:

Although I concur in the decision of my esteemed colleagues, I write separately to emphasize my view that since this matter turns on the issue of bad faith as it relates to the imposition of attorneys' fees, I have serious doubts as to how far our judicial system can go in precluding inspection of court documents by a litigant who has a legitimate interest in and

right to explore them. However, since in this particular case, the issue has been waived, this court is correct in not addressing it.