27414.   CRISWELL *et al. v.* JONES *et al.*

*Curry & Curry, Paul T. Chance,* for plaintiffs.

*Hull, Barrett, Willingham & Towill,* for defendants.

SUTTON, J. On January 7, 1938, Mr. and Mrs. D. W. Criswell filed in the superior court of Richmond County a petition to adopt Patricia Betton, a child of three years, the minor daughter of Mrs. Clara Betton, both being residents of said State and county; the petition conforming to the requirements of the Code, § 74-402, and alleging that the father had abandoned the wife and child and had moved to parts unknown, and the mother had since cared for and supported the child; that the mother had in writing consented to the adoption sought, a copy of such consent being attached to the petition, in which writing the mother stated that she was financially unable to rear the child, on account of being out of employment; that the child was in the temporary possession of Mr. and Mrs. J. T. Jones, of said county, having recently been delivered into their custody by the juvenile court of Richmond County over the protest of the mother. Mr. and Mrs. J. T. Jones were personally served with the petition and process; and Mrs. Clara Betton, the mother of the child, acknowledged service. On February 1, 1938, Mr. and Mrs. J. T. Jones filed in said superior court a petition to adopt the same child. In the petition, conforming to the requirements of the Code, § 74-402, it was alleged that the father, as the petitioners were advised and believed, had abandoned the child and her mother; that his address was unknown; that the custody of the child had been legally and permanently acquired by them from a child-placing agency, namely the juvenile court of Richmond County, that said court first obtained custody of the child on or about November 10, 1937, and awarded her custody to petitioners on or about December 10, 1937; that the mother of the child was fully cognizant of the proceedings and order of said juvenile court; that no appeal had been taken

from such orders, that the juvenile court, as a duly licensed child-placing agency, had in writing approved of the adoption of said child by petitioners, such order having been signed by H. A. Woodward, judge of said court, and a copy thereof being attached to the petition. Copies of the petition and process were served personally on Mrs. Clara Betton, the mother, and on Judge Woodward.

Mr. and Mrs. Jones filed an answer to the petition of Mr. and Mrs. Criswell, denying that the consent of the mother to the adoption of the child by the Criswells was of any legal effect, and setting up that the juvenile court of Richmond County, as a duly licensed child-placing agency, had acquired full, complete, and proper jurisdiction of the child, and on December 16, 1937, after a full and complete hearing, had passed an order consenting to the adoption of said child by Mr. and Mrs. Jones; and that they had filed in the superior court a petition for adoption of the child. The Criswells filed a demurrer on the grounds that the answer did not set forth any legal or sufficient objection to the adoption by them of the child, that it appeared from the answer that demurrants were lawfully entitled to adopt the child, that it appeared that the only objection to their adoption was that the respondents desired to adopt her and had filed a petition for that purpose, and that the only right they claimed was based upon an order of the juvenile court of Richmond County, whereas under the law the right of adoption is based upon the consent of the child's parents.

By consent order the two cases were consolidated. After a hearing, the court passed an order overruling the demurrer of the Criswells, denying the petition for adoption by them, granting to Mr. and Mrs. Jones the right to adopt the child, awarding temporary custody to them, directing that a second hearing be had after the child shall have been in their custody for a period of six months, and providing that until then the child be declared the adopted child of Mr. and Mrs. J. T. Jones and capable of inheriting their estates, that the name of the child be Cleo Patricia Jones, as prayed, and that during the six-months period the relation between them, as to their legal rights and liabilities, be that of parent and child, except that the adoptive father shall not inherit from the child; the final order of the court to be based upon a second hearing at the expiration of the six-months custody. To this order the Criswells excepted. Error is assigned on the grounds that the

judgment is contrary to law and equity, is without evidence to support it, and is in conflict with the evidence; that it appears from the evidence, without question or dispute, that the child was in no sense delinquent or neglected, and was receiving proper care and attention in the homes of prominent families where the mother had placed her when the juvenile court sought to acquire jurisdiction; that it appeared from the evidence, without question or dispute, that Mr. and Mrs. Jones instigated the proceedings in the juvenile court and improperly invoked the aid and processes of that court, with the design and purpose of obtaining possession of the child by besmirching the character of the mother; that the method of legal adoption in this State is strictly statutory, and requires the consent of the parents, if living, and the consent of no one if not living; and that the juvenile court had no authority under the act creating it to take the place of the parents and give its consent to adoption.

The present controversy is between two families seeking adoption of a minor child, the plaintiffs in error contending that the consent of the mother was controlling; and the other family contending that parental control had been lost by the surrender of the child to the juvenile court of Richmond County, a child-placing agency, that under the facts the mother's consent was futile and without legal effect, and that the consent of the juvenile court, other requisites being present, authorized the adoption of the child by the defendants in error. Against the latter contention it is urged by the plaintiffs in error that by the act of 1922 (Ga. L. 1922, p. 72), the juvenile court ceased to be a child-placing agency, and that its consent to adoption was unavailing. The judge of the superior court found against the contentions of the plaintiffs in error, holding, among other things hereinafter dealt with, that the juvenile court had lawfully acquired jurisdiction of the custody of the child, and had thereafter awarded temporary custody to the defendants in error after two hearings in connection with the alleged improper surroundings of the child, as to which the mother had been personally served and attended in person; that the judgments and orders of the juvenile court could not be collaterally attacked, the only method of attack being by application for certiorari to the superior court, which had not been made, but that in any event the evidence before the juvenile court was sufficient to authorize

that court to take jurisdiction of the custody of the child as a child-placing agency duly licensed for permanent placing of minor neglected children in a foster home; and that it had approved, as it had a right to do, the adoption by the defendants in error.

The law relating to the creation and jurisdiction of juvenile courts in counties having a population of 60,000 or more is found in chapter 24-24 of the Code of 1933. § 24-2401 declares that the provisions of the act shall be liberally construed and as remedial in character, and that the powers conferred are intended to be general to effect the beneficial purpose set forth. § 24-2402 provides that "This chapter shall apply to every child under 16 years of age . . who . . is in such condition or surroundings or under such improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of such child, or . . who comes within the provision of any law for the education, care and protection of children." By the act of 1935 (Ga. L. 1935, p. 399) it was provided: "Whenever any such juvenile court shall have acquired jurisdiction of any child under 16 years of age, such jurisdiction shall continue so long as, in the judgment of the court, it may be necessary to retain jurisdiction for the correction, or education of such child." § 24-2403 relates to filing of petition by any person having knowledge or information that a child is within the provisions of § 24-2402. § 24-2404 relates to investigation and summons. § 24-2405 deals with taking the child into custody. § 24-2406 deals with service of summons. § 24-2408 deals with the hearing of the case. § 24-2409 provides for placing of the child in suitable home or eleemosynary institution. § 24-2410 provides that the child is to be dealt with as a ward of the State. § 24-2417 provides for application for certiorari to all final judgments of juvenile courts. § 24-2427 provides for modification of final order committing child, and retention of jurisdiction to change form of commitment or transfer of custody of child and exercise of control conducive to best interest of child. § 24-2435 provides for appointment of individual or general guardian of person and property of child when child is not committed to any institution or to custody of an incorporated society. It follows from the above that the juvenile court of Richmond County is a child-placing agency licensed by the legislature, with broad supervisory powers, to assure the welfare of a neglected child or one

found to be under such improper or insufficient guardianship· or control as to endanger its morals, health, or general welfare.

Legal adoption is purely of statutory origin, being unknown to the common law. The Code, § 74-401, declares: "No person may· adopt a child, so as to render it capable of inheriting his estate, unless such person is (1) at least 25 years of age, or (2) married and living with husband or wife. The petitioner must be at least 10 years older than the child, a resident of this State, and financially able and morally fit to have the care of the child. If the child is 14 years of age or over, his consent shall be necessary to the adoption." In the present case it is undisputed that the peti-tioners on both sides measured up to the qualifications expressed, and the child was less than fourteen years of age. ·As to consent, it is provided in § 74-402 that in the petition the consent of the father or mother shall be shown, and that if there be no father and no mother the consent of no person shall be necessary to the act of adoption. § 74-403 provides for summons, notice, hearing, and consent of child-placing agency, under certain conditions. In that respect it is declared: "When a child has been awarded by court order, or otherwise legally and permanently surrendered, to the custody of a licensed child-placing agency for permanent placing in a foster home, such agency shall be served with summons in lieu of parents and relatives, and the written consent of such agency shall be filed with the court before adoption can be granted." That language is codified from the act of 1927 (Ga. L. 1927, p. 142), which in certain particulars amended previous legislation on the subject of adoption. This legislation followed the act of 1922 (Ga. L. 1922, p. 72), which provided, upon application to the judge of the superior court, for issuance of child-placing licenses to persons, agencies, hospitals, maternity homes, institutes, or pub-lic or private officials who may desire to engage in child placing, and conferred certain powers upon the Board of Control of Eleemosynary Institutions created by the act of 1919 (Ga. L. 1919, p. 222; Code, § 99-101), amended by the act of 1931 (Ga. L. 1931, pp. 7, 20). By the act of 1937 (Ga. L. 1937, p. 355), the powers and duties of such board have been transferred to and ·are vested in the State Department of Public Welfare created by such act (see §§ 99-433 and 99-434 in cumulative pocket supplement ·to Code of 1933) ; but the change in no wise abolished ·the authority

of the judge of the superior court to issue child-placing licenses after findings as to competence and equipment of applicants shall have been submitted by the State Department of Public Welfare. It is contended by the plaintiffs in error that the enactment of the child-placing act had the effect of repealing the authority theretofore vested in juvenile courts by the act of 1915 (Ga. L. 1915, p. 35, codified as chapter 24-24 of the Code), as child-placing agencies. We do not think that this contention is tenable. The act of 1922 (Ga. L. 1922, p. 72; Code, § 99-201 et seq.) does not refer to any of the sections of chapter 24-24 of the Code, relating to the creation and jurisdiction of juvenile courts; and while it provides that all acts and parts of acts in conflict with the act of 1922 are thereby repealed, it can not be said that it was the intention of the legislature to take from juvenile courts the powers theretofore granted. Repeal by implication is not favored. There is a specific course to be followed by the legislature in repealing or amending. Code sections, and it is the rule that a statute is not to be held repealed unless no other reasonable construction can be placed upon the subsequent act. The reasonable and proper construction of the act of 1922 is that it merely added new child-placing agencies of the kind specified in the act, leaving intact the authority of the juvenile courts which had already been licensed by legislative act as child-placing agencies.

It is further contended by the plaintiffs in error that that part of the act of 1927 (Ga. L. 1927, p. 142; Code, § 74-403), "When a child has been awarded by court order, or otherwise legally and permanently surrendered, to the custody of a licensed child-placing agency for permanent placing in a foster home, such agency shall be served with summons in lieu of parents and relatives, and the written consent of such agency shall be filed with the court before adoption can be granted," can have reference only to a case where the child has been surrendered to those agencies authorized by the act of 1922 (Ga. L. 1922, p. 72); that it is only the consent of those agencies, and not the consent of a juvenile court, as a child-placing agency, that was within the contemplation of the legislature; and that "court order" means only the order of a superior court. We think that this language was by the codifiers appropriately placed in chapter 74-74 of the Code, relating to the general subject of adoption, and not in chapter 99-2, relating to placement

of children by special agencies, and particularly in § 99-208, relating to legal adoption of children placed by special agencies, and that it is equally susceptible of the construction, which we hold to be the proper one, that it also provides for a situation where the child has been awarded by a juvenile court to its own custody or to a special child-placing agency, as provided for in chapter 99-2, for permanent placing in a foster home, and where, as the case may be, the judge of the juvenile court, or such other child-placing agency, shall be served in lieu of parents with summons in an adoption proceeding in the superior court, and that the written consent of the child-placing agency, juvenile court or otherwise, shall be filed with the superior court before adoption can be granted. Likewise, if the child has been legally and permanently surrendered to the custody of the juvenile court as a child-placing agency, or to some special agency to which a license has been issued under the Code, § 99-203. This language clearly contemplates a situation where parental control has been lost because of the facts stated, and where the consent of the parent, though ordinarily requisite, is no longer necessary; and instead the law provides that the written consent of the child-placing agency, juvenile court or otherwise, to which the child has been committed by court order or legally and permanently surrendered by the parent, shall be sufficient to authorize adoption where all the other requisites of the law have been met.

It is apparent from the record that upon proper petition by a probation officer the juvenile court assumed jurisdiction of the custody of the child here involved, and, after a hearing on November 10, 1937, adjudged that the mother was unfit to have the custody, and that it took the child into its custody and placed her with Mrs. Ruby McCord, sister of the mother and an estimable woman. The mother made no application for certiorari, and acquiesced in the order of the court. It is sufficient to say, without setting out the sordid details, that the court was authorized to find that the child was in "such condition or surroundings or under such improper or insufficient guardianship as to endanger the morals, health, or general welfare of" the child. It is further contended by the plaintiffs in error that the processes of the juvenile court were improperly invoked by the defendants in error, in that they instigated the investigation after attempting to besmirch the character of the mother with the ulterior purpose of obtaining the court's consent to adop-

tion of the child. But it is shown that the juvenile court's attention was first called to the condition of the child by her stepfather, whom the mother had divorced, but who still retained a humane interest in the child; and that as far back as May, 1937, and before the Jones couple are alleged to have sought to discredit the mother, the juvenile court had already made some investigation. The child's father had fled, and the mother had subsequently married Betton, to whom she had given the name of the child. Testimony was given by Mrs. Criswell as to Mrs. Jones having improperly started the investigation, and, inferentially, circulated untruths, but it was only opinionative and speculative and without any basis for evidential value. The court was authorized to find that their conduct was at all times proper. In some way the mother had managed to pay $3 per week for the support of the child, who had alternately lived in the homes of Mrs. H. A. Partain and her sister, Mrs. Criswell, for a period of several months. After the award of temporary custody to Mrs. McCord, it appears that, Mrs. McCord being employed, the child continued to spend her time with Mrs. Partain; that eventually Mrs. McCord notified the court that the mother of the child had disappeared and her whereabouts were unknown, and that she desired to return the child to the court, because she, Mrs. McCord, was employed, and the mother was not doing anything for the child.

On proper petition by a probation officer of the juvenile court a second hearing was had on December 10, 1937, and at that time the child was brought into court by Mrs. Partain. There was some question as to whether the child had been produced merely because Mrs. Partain thought the presence of the child was desired by the court, or with the intention on the part of Mrs. Partain to surrender the child; but the court was authorized to find that the latter was true, particularly as Mrs. McCord, in whose custody the child legally was, had reported that she could not keep the child any longer. While it is contended that the second hearing was informal and brief, and that in fact no testimony was given, the judge of the juvenile court testified that it was frequently the practice in that court to hold informal hearings, but that the investigation was thorough and continued for an hour. The mother was present and apparently acquiesced in the permanent surrender of the child, and she sought no writ of certiorari to review the final

judgment. Thereby she lost her parental control and her right to give consent to adoption, and this right became vested in the juvenile court of Richmond County. That she intended permanently to surrender the child is further shown by the fact that in attempting to give her consent to adoption of the child by the Criswells she stated that she was financially unable to rear the child, on account of being out of employment. Although, as stated by the judge of the superior court in his final order, the two judgments of the juvenile court were not subject to collateral attack, it is shown by the record that that court properly and legally acquired jurisdiction as to the custody of the child in question, that it took the child into its custody as a ward of the State; that subsequently it awarded the temporary custody of the child to Mr. and Mrs. J. T. Jones, Mr. Jones being a distant relative of the child; and that the juvenile court had, through the judge thereof, given its consent to the adoption of the child by such parties. The judge of the superior court properly found that the petitioners for adoption were on both sides people of good character and thoroughly capable of properly rearing the child. It appeared, however, that the child was already in the home of the Jones family by proper order of the juvenile court, that it was perfectly happy and well provided for, and that Mr. Jones was a distant relative of the child. While the evidence shows that the Criswells were worthy people, and would undoubtedly properly care for the child if she were awarded to them for adoption, still a wide discretion is vested in the judge, and his discretion will not be controlled unless manifestly abused. Under the record that discretion has not been abused, and the order of adoption by the Jones couple must be affirmed.

Thus far no mention has been made of the demurrer filed by the Criswells to the answer which the defendants in error filed to the petition of the Criswells. It was thought desirable first to set forth the law on the subject of adoption and consent; and from what is shown above it follows that the grounds of the demurrer were without merit.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*