34468. JOHNSON *v.* STRICKLAND *et al.*

Decided May 27, 1953.

*Kopp & Peavy,* for plaintiff in error.

*Lea & Lea,* contra.

WORRILL, J. Mathew Strickland and Ella Griffin Strickland instituted a proceeding in the Superior Court of Ware County to adopt John Henry Johnson and Jennie Irene Johnson. They alleged that the said children were their grandchildren, that their daughter, the mother of the children, was dead, having died in October, 1943, and that the father of the children, John Henry Johnson, had abandoned them, making it unnecessary that his consent to the adoption be attached to the petition. The father filed an answer in which he denied that he had abandoned the children.

At the interlocutory hearing evidence was introduced by the petitioners and by the father on the question of abandonment; the father made a motion that the interlocutory order be refused and that the petition be dismissed, but after the hearing the trial court denied that motion and entered an order granting temporary custody of the children to the petitioners and finding that the father "has just cause to be relieved of the care, support, and guardianship of said children." To this order the father excepted and filed his bill of exceptions to this court.

The sole question presented by the record in this case and argued by counsel for both parties is whether or not the evidence was sufficient to authorize a finding that the father had abandoned the children in question so as to make his consent to the adoption unnecessary under the provisions of the adoption statute, Code (Ann. Supp.) Ch. 74-4, particularly §§ 74-403 and 74-404. The material facts as shown by the evidence are not in actual dispute; and when such evidence is viewed in the light most favorable to support the finding of the trial judge, it would authorize him to find that the children sought to be adopted were the offspring of the petitioners' daughter and the plaintiff in error; that their mother, the petitioners' daughter, was killed in an accident in October, 1943, in which accident the father

received severe burns, which temporarily incapacitated him; that, immediately after that accident, the petitioners took custody of the boy and the father's sister took custody of the girl, who at that time was a very young infant; that after nine months the father's sister delivered the girl to the petitioners, and they have had custody of both children for the entire time since then except for a period of some 23 months from June, 1949, to May, 1951, when the children lived with the father and his wife in Washington, D. C. (the father having remarried in 1947); that during that period the petitioners had furnished food, clothing, medical care, and shelter for the children and had sent them to school and in all other ways made a home for them; and that the father had furnished nothing more than perhaps bringing them Christmas gifts of toys and some small items of clothing; that the children, one or the other or both of them, had visited the father and his wife on a few occasions other than that mentioned above; that the father had asked the petitioners to permit the children to visit him, but never asked that they come and live with him, and had on one occasion made the statement that "he didn't want the children." There was evidence that the little girl had had a tonsillectomy not long before the commencement of the adoption proceeding and that the father had promised to pay some of the expense thereof, but had not done so.

"Except as otherwise specified in the following sections, no adoption shall be permitted except with the written consent of the living parents of a child." Code (Ann. Supp.) § 74-403. "Consent of the parents shall not be required where a child has been abandoned by its parents." Id., § 74-404. These provisions of the act of 1941, which revised our adoption laws, leave no room for interpretation other than that either consent or the abandonment of the child by the living parent or parents must be shown by the petitioners for adoption. Somewhat similar wording of the old law was held in *McComas* v. *Glendinning*, 59 *Ga. App.* 234, 235 (200 S. E. 304), to require a showing of either consent or abandonment by the living parents.

It has been held that adoption laws are to be strictly construed in favor of the natural parents. *Glendinning* v. *McComas*, 188 *Ga.* 345 (3 S. E. 2d 562). While the superior court has a very broad discretion in matters of adoption, which discretion will not

be controlled by the appellate courts except in plain cases of abuse, such discretion is a legal one; and where the authority of the court to proceed with the adoption is dependent on the existence of consent by the living parent or parents or on a showing of the abandonment of the child by such parent or parents, the evidence of consent or of abandonment must be legally sufficient to authorize a finding of fact by the court that the consent has been given or that the parent has abandoned the child. Under the foregoing rules of law, the burden in this case was on the adopting parents to show a legal abandonment of the children by the father, since no consent was attached to the petition.

The meaning of the word "abandonment" as used in the previous adoption law was fully and amply defined in *McComas* v. *Glendinning*, supra. In that case, Judge Felton, speaking for this court, beginning near the bottom of page 235 of 59 *Ga. App.*, said: " 'Abandon' is defined in Webster's New International Dictionary (2 ed.) as meaning 'to relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person to whom one owes a duty, allegiance, or the like.' Other definitions of the word 'abandon' are, 'to forsake or renounce utterly; give up wholly; desert.' Funk & Wagnalls New Standard Dictionary of the English Language. 'To relinquish; forsake; give up. The word includes the intention.' Bouvier's Law Dictionary, 3rd Revision. 'Abandonment' means an absolute relinquishment; a total desertion. 1 C. J. 5. Intention is the first and paramount object of inquiry. 1 C. J. 7. 1 Abbott's Dictionary of Terms and Phrases defines abandonment as the relinquishment, surrender, or disclaimer of one's rights, and says: 'But the surrender of a relation, involving as it does the disclaimer of duties more prominently than that of rights, is better styled desertion,' and defines 'desertion' as 'the abandonment of a relation or service in which one owes duties; the quitting, wilfully and without right, one's duties; the withdrawal, unexcused, from the obligations of some condition or status.'

"Code, § 74-9902, making the abandonment of a child a misdemeanor, provides: 'If any father shall wilfully and voluntarily abandon his child, leaving it in a dependent condition, he

shall be guilty of a misdemeanor. . . A child thus abandoned by the father shall be considered to be in a dependent condition when the father does not furnish sufficient food and clothing for the needs of the child.' The only sources of information upon the question in this State are the decisions of our courts defining the term as used in Code, § 74-9902. These definitions by the courts of this State, as well as the general definitions given above, include the idea that the father must desert the child, or, in other words, sever the parental relation and throw off all parental obligations. *Gay* v. *State*, 105 *Ga.* 599 (31 S. E. 569, 70 Am. St. R. 68) ; *Jemmerson* v. *State*, 80 *Ga.* 111 (5 S. E. 131). As was said in Truelove *v.* Parker, 191 N. C. 430 (132 S. E. 295), merely permitting the child to remain for a time undisturbed in the care of another is not such an abandonment as would deprive the parent of the right to prevent the adoption of such child, since in such case abandonment must be wilful; that is, accomplished purposely and deliberately in violation of law. Refusal to provide a child with the necessities of life is only one element in the act of abandoning a child."

There is no reason to assume that the General Assembly in revising the adoption laws used the word "abandonment" in any sense other than as the courts had interpreted it in prior cases. The language quoted above seems particularly appropriate to the facts of this case and seems to require the conclusion that the evidence, when viewed most favorably to the petitioners, did not authorize the judge to find that the father had abandoned the children, and therefore did not authorize the entry of the interlocutory decree. The court, therefore, erred in entering the interlocutory decree and in overruling the motion of the father that the proceeding be dismissed.

*Judgment reversed. Sutton, C.J., and Felton, J., concur.*