45149. CLARK et al. v. BUTTRY et al.

PER CURIAM. Bossie and Lula Clark sought to adopt the illegitimate minor child of Pecola Griffin, their foster daughter, with whom she had lived and to whom she had given a written custody and consent for adoption. Robert L. Buttry, Jr., the putative father of the child, filed objections to the adoption and at the same time sought to legitimate the child and an adoption of the child by himself and his wife, who joined in the prayers. At the hearing it appeared from the evidence that the Clarks, aged 62 and 54 respectively, were people of good character, in good financial condition with moderate income and that the mother of the child, while not related to either of them, had lived with Clark and his first wife (who had died, he having remarried) as a foster daughter since childhood; that she left the home in October, 1968, and shortly afterward gave the child to the Clarks for adoption,

in whose custody it had continuously remained and that they had supported it.

Buttry admitted paternity of the child, asserting that he had entered the military service before it was born and that after service in Vietnam he had returned and married his present wife, who is employed as a teacher in the public schools. Although he has not supported the child, he and his wife are anxious to have him and adopt him as their own; that they are people of good character and both have good jobs with a combined income of about $750 per month, which would enable them to afford the child excellent care in wholesome surroundings.

The mother of the child testified that she had lived with Clark since childhood, that upon leaving the home she had given the child to them for adoption and had executed a written consent for its adoption by them and that they had kept and supported the child since she left it with them. She asserted that Buttry was its father, but that she preferred its adoption by the Clarks.

The court entered judgment that "After consideration of the evidence presented and the arguments submitted by counsel and objections filed by the father of said minor, it is considered, ordered and adjudged by the court that the petition of Bossie Clark and Lula Clark for adoption of the minor child be and the same is hereby denied. From this judgment the Clarks appeal. *Held:*

1. The father of an illegitimate child[1] has no standing to object to the adoption of the child by applicants having the written consent of the mother, the consent not having been revoked, and particularly where it is reaffirmed by her testimony[2] at

---

[1]For definitions of a legitimate child see *Code* § 74-101, and of an illegitimate child § 74-201. Although the father has no right to custody or control of the child without legitimation, he is bound to support it. *Code* § 74-202. Until legitimation the legal right of custody vests exclusively in the mother. *Code* § 74-203.

[2]Parental consent for adoption "when given freely, voluntarily, may not be revoked by the parents as a matter of right." *Code Ann.* § 74-403; *Queen v. Ballew,* 221 Ga. 1 (142 SE2d 841); *Collier v. Johnson,* 89 Ga. App. 39 (3) (78 SE2d 539). Aliter if consent not in writing. *Wheeler v. Little,* 113 Ga. App. 106 (147 SE2d 352).

the hearing on the petition for adoption. *Smith v. Smith*, 224 Ga. 442, 446 (162 SE2d 379).

2. Until there has been a legitimation of the child by the father the mother is the only recognized parent, and when she consents to the adoption of the child and voluntarily releases her right of custody and control to applicants for adoption, the applicants succeed her as parties having the legal right of custody and control. *Day v. Hatton*, 210 Ga. 749 (83 SE2d 6); *Watkins v. Terrell*, 196 Ga. 651 (1) (27 SE2d 329). Her consent alone is sufficient to entitle applicants to proceed. *Code Ann.* § 74-403 (3).

3. The father urges that there was an abandonment of the child by the mother when she left it with the Clarks and thereafter failed to support it. We do not so regard it. She had transferred to the applicants her legal right to the custody and control of the child for the purpose of its adoption. And see *Holbrook v. Rodgers*, 105 Ga. App. 219 (124 SE2d 443); *Johnson v. Strickland*, 88 Ga. App. 281 (76 SE2d 533).

4. That the best interests of the child is an issue to be determined in a proceeding for adoption is unquestionably true. Statutory provisions require the court to require an investigation and report by the Department of Family and Children Services and to satisfy itself that the parents have good cause to be relieved of the custody, control and support of the child and that the applicants for adoption are people of good moral character, financially and physically and morally fit to have its care and custody and the responsibility for its upbringing, and generally that the proposed adoption is "for the best interests of the child." *Code Ann.* § 74-409 et seq.

5. The evidence concerning the applicants, Bossie and Lula Clark, was undisputed that they were people of good character, morals and habits and that they were in "good financial condition," and able to care for the needs of the child. It also is undisputed that Buttry, the putative father and his wife are likewise people of good character, habits and morals and in good financial condition, each with a good income and that they could take care of the child's needs.

In this situation it has been held that the court generally has a broad discretion in choosing between petitioners for an adoption, and where it is not manifestly abused that discretion is not to be disturbed. *Criswell v. Jones*, 60 Ga. App. 81 (5) (3 SE2d 115).

However, inasmuch as the mother had executed her written consent to the adoption of the child by the Clarks and there had been no legitimation of it by the father prior thereto, the father has no standing to make objections to this proceeding unless, perhaps, as a friend of the court, to show a lack of character and fitness on the part of the Clarks. *Smith v. Smith*, 224 Ga. 442, 446, supra; *Code Ann.* § 74-412.

6. In adoption proceedings, as in all child custody proceedings, the trial court has wide discretion in determining the custody of the minor child and appellate courts will not, nor should they, disturb such ruling unless the record shows flagrant or manifest abuse. *Criswell v. Jones*, 60 Ga. App. 81 (5), supra; *Johnson v. Strickland*, 88 Ga. App. 281, 283, supra; *Attaway v. Attaway*, 194 Ga. 448 (22 SE2d 50); *Lynn v. Lynn*, 202 Ga. 776 (44 SE2d 769). The paramount issue is the welfare of the child. *Waller v. Waller*, 202 Ga. 535, 538 (43 SE2d 535).

While the trial court recited that the father's objections were considered, along with all the pleadings and the evidence before the court, we do not find this to be reversible error. The law provides that if, after the hearing, the court is satisfied that it should be done, an order shall be entered granting the adoption; if it is not satisfied the court may refuse to enter the order and dismiss the petition. *Code Ann.* § 74-414. Here the trial court denied the petition. There is evidence in the record, outside the father's objection, to support this judgment, e.g., the age of the applicants, their recent marriage, their reduced income after retirement, and many other factors. No abuse of the trial court's discretion is shown.

7. We need go no further. All other issues concerning the putative father's right to object (see *Day v. Hatton*, 210 Ga. 749, supra; *Hall v. Hall*, 222 Ga. 820 (152 SE2d 737)), or his prior or subsequent rights as to legitimation, are irrelevant and unnecessary to an adjudication of the only issue before this court, i.e., did the trial court, under the evidence in this case, abuse its discretion in denying the petitioner's application for adoption of the minor child.

*Judgment affirmed. Jordan, P. J., Eberhardt and Pannell, JJ., concur.*

SUBMITTED MARCH 3, 1970—DECIDED MARCH 13, 1970—
REHEARING DENIED MARCH 26, 1970—

*Sullivan, Herndon & Crawford, John J. Sullivan,* for appellants.

*Falligant, Doremus, Karsman & Maurice, Robert E. Falligant,* for appellees.

EBERHARDT, Judge, concurring. Because of the statutes and the cases cited I must concur in the opinion and judgment. However, it seems to me that there is a discord in this facet of the law, particularly in the light of the view of today's society toward children of an "unlocked wedlock." It seems incongruous to say that the father, who wishes to assume the obligation imposed upon him by statute (*Code* § 74-202), to legitimate and adopt his son, who is the "blood of his blood and bone of his bone," and bring him through youth to maturity and manhood under the guidance and restraints of a father who loves and cares, has no standing as against strangers to whom the mother has surrendered her rights and interest in the child.

The father is young, but his experiences on the battlefields and unfriendly terrain of Vietnam have doubtless matured him beyond his years. He could devote time to the instruction of the boy in intangibles of untold worth in all the years of life by roaming with him through the fields and woods and about the streams, the mountains and ocean shore, teaching him to hunt and to fish, to identify the flora and the fauna and to appreciate the beauties and wonders of nature, to play "Little League ball," to engage in activities of the Boy Scouts and other similar things. The worth of such character building efforts by a father with his children is immeasurable. He can do much to instill in the boy a respect of and love for his country and bring him to maturity with a realization of his responsibilities as a citizen. But we must deny those opportunities both to the father and to the son.

The father and his wife hold good, responsible jobs in the community, producing incomes which will enable them to afford the boy the necessities and many of the comforts of life and, most importantly, a good education. When the time arrives for college education or special training of the child they will be in the prime of life.

This is not to disparage the applicants, to whom the mother

has given her rights in the child. The evidence requires a finding that they, too, are good people. I have no doubt that their efforts would be in the right direction. But it simply cannot be overlooked that they do not and cannot have the interest of a blood kinsman; that they are approaching the time in life when the shadows lengthen; and that within two years the breadwinner will have retired when they, with the child, must live on social security. When the boy has reached adulthood it is not unlikely that the applicants will be on the golden isles of somewhere—beyond the sunset.

It seems to me that there should be some recognition in our law of the father's interest beyond the imposition of an obligation to support.