63550. In re APPLICATION OF ASHMORE.

Deen, Presiding Judge.

Ashmore appeals from the denial of his petition to legitimate his infant daughter.

1. Two of Ashmore's enumerations of error contend that Friends of Children, Inc. (a private adoption agency licensed in Georgia) and John and Jane Doe (fictitious names of the adoptive parents) lack standing to file an objection to his petition because only the child's mother can object to the petition and she has not filed an objection.

The evidence shows that the child's mother surrendered her parental rights to the child to the adoption agency two days after its birth and the child was placed by the agency in the home of John and Jane Doe. Prior to the child's birth, Ashmore was informed of the mother's intent to surrender the child by a caseworker, but he refused to surrender his rights. He told the caseworker that he had no objection to the child being placed for adoption because the child's mother refused to marry him and he was unable to provide for it. The caseworker testified that she also sent him written notice of the mother's intent to surrender the child for adoption, but he made no reply. After he received notice that a petition to adopt the child was pending in the Superior Court of Hall County, he filed his petition to legitimate.

Code Ann. § 74-103 states: "A father of an illegitimate child may render the same legitimate by petitioning the superior court of the county of his residence ... [and] the mother, if alive, shall have notice. Upon such application, presented and filed, the court may pass an order declaring said child to be legitimate. . . ."

Ashmore relies on *In re Pickett,* 131 Ga. App. 159 (205 SE2d 522) (1974). In that case, the court held that it is the manifested legislative intent that the father have a right to legitimate his child and that this right is absolute subject only to the qualification that the natural mother may object and if she shows valid reasons for her objection, the court may deny the petition. We agree that is a correct statement of the law. In 1977, however, the General Assembly amended Chapter 74-4 (Adoption) of the Code in its entirety. Ga. L. 1977, p. 201 et seq.

Code Ann. § 74-406 (c), Ga. L. 1977, p. 213, provides: "When notice is to be given pursuant to subsection (a) or (b) above, it shall advise the putative father that he loses all rights to the child and will neither receive notice nor be entitled to object to the adoption of the child unless he files (1) a petition to legitimate the child pursuant to Section 74-103, and (2) notice of such petition to legitimate with the court in which the adoption is pending, within 30 days of receipt of such notice."

Although Code Ann. § 74-103 only provides for notice to the mother, this court has found that this notice implies a right to file objections to the petition. See *Mabry v. Tadlock,* 157 Ga. App. 257 (277 SE2d 688) (1981); *Best v. Acker,* 133 Ga. App. 250 (1) (211 SE2d 188) (1974); *Henderson v. Shiflett,* 105 Ga. 303 (31 SE 186) (1898). As notice is required to be given to the court where the adoption is pending, such notice must also imply a right of the adoption agency and the adoptive parents to file objections. Moreover, Code Ann. § 81A-124(a) provides: "Upon timely application anyone shall be permitted to intervene in an action. . . when the applicant claims an interest relating to the . . . transaction which is the subject-matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." As the agency and adoptive parents had an interest in the transaction as legal custodians of the child and their rights were not represented, they had a right to intervene. See *Coxwell v. Coxwell,* 240 Ga. 46 (2) (239 SE2d 371) (1977).

2. Ashmore's assertion that "fictitious persons" (John and Jane Doe) were improperly permitted to file objections is without merit. The attorney for the adoption agency and the adoptive parents filed petitions to object to the petition on behalf of all the parties. The adoptive parents have physical custody of the child and have an interest in the child, having filed a petition to adopt her. It is, however, the public policy of this state to protect the confidentiality of adoptive parents and this policy is expressed in various places in Chapter 74-4 (Adoption) of the Code. See especially Code Ann. §§ 74-404, 74-417. Although we have held in Division 1 above that the adoptive parents could file objections, their true identity need not be revealed.

3. The trial court properly admitted photocopies of letters sent to Ashmore by the adoption agency. Code Ann. § 38-710.

4. Ashmore's remaining enumerations of error all contend that the trial court abused its discretion in denying his petition. In deciding whether to grant or deny the legitimation petition, the court must consider the best interest of the child and is not bound by the

desires and contentions of the parents. *Bennett v. Day,* 92 Ga. App. 680 (3) (89 SE2d 674) (1955). In making this determination, the court must examine the benefits that might flow to the child if she were legitimated and to consider the legal consequences of the grant of the petition. In *Mabry v. Tadlock,* supra at 258, this court noted: "A father's duty to support his minor children is the same whether they are legitimate or illegitimate. Code § 74-205. In such circumstances the mother, being the only recognized parent, exercises all the paternal power. Code § 74-203. Legitimation thus gives the child no more right to support, and no more right than he already has not to be discriminated against because of his birth. Code § 74-204." Under Code Ann. § 74-103 legitimation makes the child capable of inheriting from the father in the same manner as a legitimate child and it is permitted to use its father's name. Thus, the child in the present case would gain certain inheritance rights and the use of its father's name. However, if Ashmore's petition were granted, the adoption proceedings in Hall County would be terminated because Code Ann. § 74-406 (e) provides that an adoption is not permitted except as provided in Code Ann. §§ 74-403 and 74-405.

The trial court found it to be in the best interest of the child to deny Ashmore's petition. The court concluded: "That the Petitioner has failed to demonstrate sufficient parental interest in the child and that harm would come to this child by granting Petitioner's request and thereby disrupting the child's stable family unit greatly and such exceeds any benefits which might flow to the child and will greatly outweigh any harm which will come to the biological Father and, that the Petition was brought to nullify a release signed by the Mother and an Order to Legitimate the Child would place the child back in the custody and responsibility and care of the person that signed the original release, releasing all interest and claim in and to the child."

The trial court's findings of facts, supported by the evidence at the hearing, showed that the child was presently residing with her adoptive parents where she had been placed shortly after birth and that the fitness of John and Jane Doe to adopt would be determined at the hearing on the adoption. Ashmore had been expelled from high school in the eleventh grade for a drug problem and had a history of alcohol abuse; he had no particular skill or trade, had changed jobs three times over the past year and was currently earning a little over $4.50 an hour. His wife had left high school in the tenth grade when she became pregnant and has never held a job. The couple were currently residing with his parents in a two-bedroom mobile home, although he stated that he had made arrangements to rent one for their own use. Ashmore was seventeen when the child was born (he is

now eighteen) and the mother was sixteen (she is now seventeen). The evidence further showed that he was informed of the pregnancy but made no effort to contribute to the mother's support. He has not provided any support for the child and on one occasion admitted that he did not want the child and was without resources to raise it. When first informed that the mother intended to release the child for adoption, he agreed to sign a release of his parental rights. He later refused to sign a release but said he would do nothing to interfere with the adoption proceedings. Although requested to do so, he did not contact the agency to raise any questions or objections after he was notified that the child's mother intended to surrender her rights to the child.

Appellant denies that custody is an issue in the present proceeding, although he testified at the hearing that he filed the petition "because I want my baby and to raise my baby myself, it's mine." In deciding whether to grant the petition, the court can determine the motives of the father in bringing the petition. *Best v. Acker,* supra; *Murphy v. Thomas,* 89 Ga. App. 687 (1) (81 SE2d 26) (1954).

At one time, consent to adoption could be arbitrarily withdrawn at any time before final judgment. *Wheeler v. Howard,* 211 Ga. 596 (87 SE2d 377) (1955); *Wheeler v. Howard,* 92 Ga. App. 547 (88 SE2d 699) (1955). Consent may no longer be withdrawn as a matter of right. *Fulton v. Schneider,* 130 Ga. App. 274 (3) (202 SE2d 706) (1973). The father of an illegitimate child has no standing to object to the adoption of a child by applicants having the written consent of the mother. *Clark v. Buttry,* 121 Ga. App. 492 (1) (174 SE2d 356) (1970). The father may seek to legitimate the child through Code Ann. § 74-103 or through marriage to the mother. See Code Ann. § 74-101; *Wheeler v. Howard,* 211 Ga. 596, supra.[1] The parents of the child were married approximately three and one-half months after the mother had surrendered the child to the adoption agency and Ashmore's petition was filed three days after the marriage. At trial in this case the mother testified that she had not wanted to sign the release. Thus, the court did not err in finding that Ashmore's motive in bringing the petition was to nullify the release signed by the child's mother and that an order granting the petition would place the child back in the custody and care of the person who had unconditionally surrendered her parental rights.

---

[1] We do not address the question of whether the marriage to the mother in accordance with the latter code section and case cited means marriage to the mother at a time before the mother has given consent to the applicants for adoption; this issue was not raised in the trial court below and, therefore, will not be addressed here.

We find no error in the court's finding that the grant of the petition would not be in the best interest of the child and there was evidence to support a finding that Ashmore had failed to demonstrate a sufficient parental interest in his child and that he had filed the petition to nullify the release signed by the child's mother. If there is any competent evidence we must affirm, as this court can not reweigh the evidence.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED JULY 8, 1982 —
REHEARING DENIED JULY 22, 1982 —

*Fred A. Gilbert,* for appellant.
*Sam S. Harben, Jr., Phillip L. Hartley, Bruce W. Moorhead, Jr.,* for appellee.