# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

**FILED**

**October 1, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **ANTHONY EARL McCANN and** | ) | Dyer County Chancery Court |
| **CYNTHIA McCANN**, | ) | No. 95A1 |
|  | ) |  |
| Petitioners/Appellees. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9704-CH-00092 |
|  | ) |  |
| **PEGGY McCANN PATTERSON** | ) |  |
| **WEATHERS**, | ) |  |
|  | ) |  |
| Intervening Petitioner/Appellant. | ) |  |
|  | ) |  |

_____

From the Chancery Court of Dyer County at Dyersburg.
**Honorable J. Steven Stafford, Chancellor**

**A. Don Walker, III**, Dyersburg, Tennessee
Attorney for Petitioner/Appellant.

**John W. Palmer**, THE PALMER LAW FIRM, Dyersburg, Tennessee
Attorney for Petitioner/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Peggy McCann Patterson Weathers appeals the trial court's order which granted the petition of Appellees Anthony Earl McCann and Cynthia McCann to adopt the two minor children of Weathers' daughter, Virginia Darlene McCann Wills. We affirm the court's final order of adoption.

Petitioner Anthony Earl McCann is the adoptive father of Virginia Darlene McCann Wills (Mother) and, thus, the grandfather of the two minor children. In their petition, McCann and his wife, Cynthia McCann, sought to adopt the two children, William Randall McCann, born May 31, 1990, and Marlene Dayne McCann, born April 10, 1992. The McCanns acquired custody of the two children in proceedings before the Juvenile Court of Bartow County for the State of Georgia in December 1994. The parental rights of the children's natural parents, including the Mother, previously were terminated by the Georgia court. The Mother had executed two sets of surrenders relinquishing her parental rights to the children, the first set being executed in favor of the Bartow County Department of Family and Children Services and the second in favor of the McCanns.

Appellant Peggy McCann Patterson Weathers (Grandmother) is the children's grandmother and Anthony Earl McCann's former wife. The Grandmother's involvement in these proceedings began when she filed a motion to intervene in which she opposed the McCanns' petition to adopt the children. As grounds for her opposition, the Grandmother alleged that the Mother was confused at the time she executed the surrenders of parental rights and that the Mother wished to revoke the surrenders. The Grandmother also alleged that Anthony Earl McCann was not a proper party to adopt the children because of his prior history of domestic violence.

The Mother later filed a motion to join in the Grandmother's motion to intervene. The Mother's motion was dismissed, however, after the attorney for the Mother and the Grandmother advised the trial court that the Mother wished to withdraw as a party to this action and that she no longer wished to oppose the adoption.

At the trial held in May 1996, the Grandmother claimed that adoption by the McCanns was not in the best interests of the children because of Anthony Earl McCann's history of

violent behavior toward the Grandmother and because of Cynthia McCann's alleged sexual indiscretions. Mr. McCann acknowledged that numerous violent confrontations occurred during his prior marriage to the Grandmother, which lasted from 1966 to 1987. McCann admitted hitting the Grandmother with his fist, pushing her against a wall, and, on one occasion, holding a shotgun to her head. McCann also testified, however, that he married his present wife, Cynthia McCann, in 1988 and that there had been no incidents of violence during this marriage. The Mother had lived in the McCanns' home for various periods of time since 1988, and she corroborated McCann's testimony about the lack of violence in his present marriage.

The Grandmother also presented the testimony of witnesses who claimed that they had observed Cynthia McCann engaging in sexual activities with men to whom she was not married. For example, Cynthia McCann's former brother-in-law testified that he once observed Mrs. McCann in bed with her former husband and another man in 1984 or 1985. Another witness testified that she observed Cynthia McCann in bed with another man in 1990 while Mrs. McCann was married to Anthony Earl McCann. Cynthia McCann denied both allegations.

During the trial, employees of the Tennessee Department of Human Services (DHS) testified on behalf of the McCanns. Specifically, social counselor Lisa Williams[1] testified that she performed both the original home study and the adoptive home study on the McCanns' home relative to the adoption. Williams testified that, in performing the home studies, she investigated the McCanns' finances, checked police records, visited the children at the McCanns' home, and talked to several references provided by the McCanns, including friends and family. Williams also testified, without objection, that these references "were favorable" to the McCanns. Williams recommended that the McCanns be permitted to adopt the children, testifying that "the family appeared capable of providing for [the] children materially and also, appeared able to provide the love and nurture for [their] physical and emotional needs."

Based on the evidence presented at trial, the trial court entered a memorandum opinion in which the court found that adoption by the McCanns was in the children's best interests.

---

[1]Lisa Williams' supervisor, Phyllis Webb, also testified at trial; however, none of her testimony related to the McCanns or to their fitness as parents.

The trial court later entered a final order of adoption, and this appeal followed.

On appeal, the Grandmother contends that the trial court erred (1) in ruling that adoption by the McCanns was in the children's best interests, (2) in admitting the testimony of the DHS employees, and (3) in failing to set aside the surrenders whereby the Mother relinquished her parental rights to the children.

Citing Tennessee Code Annotated section 36-1-118, the Grandmother first contends that she presented clear and convincing evidence of circumstances indicating that adoption by the McCanns was not in the children's best interests. As pertinent, section 36-1-118 provides that:

> If at any time between the surrender of a child directly to prospective adoptive parents and the filing of an adoption petition or at any time between the filing of an adoption petition and the issuance of the final order of the adoption, it is made known to the court on the basis of clear and convincing evidence that circumstances are such that the child should not be adopted, the court may dismiss the adoption proceedings or, if no adoption proceedings have been commenced, the court may order the surrender or parental consent to prospective adoptive parents to be revoked and may modify or dismiss any order of guardianship previously entered, and may order the reinstatement of parental rights, all in consideration of the best interests of the child.

T.C.A. § 36-1-118(a) (1996). The Grandmother contends that the trial court should have denied the McCanns' petition for adoption under this section based on the evidence of Anthony Earl McCann's violent acts toward the Grandmother during their marriage, as well as evidence of Cynthia McCann's sexual indiscretions.

This argument is without merit. The trial court's memorandum opinion issued in May 1996 reveals that the court considered all of this evidence but found that the Grandmother had failed to meet her burden of proving, either by a preponderance of the evidence[2] or by clear and convincing

---

[2]Prior to January 1, 1996, the relevant statute provided that:

> If, at any time between the filing of a petition and the issuance of the final order completing the adoption, it is made known to the court that circumstances are such that the child should not be given in adoption to the petitioners, the court may dismiss the proceedings.

evidence, that adoption by the McCanns was not in the children's best interests. In making this finding, the trial court noted that, although it was undisputed that Mr. McCann and the Grandmother had a "tumultuous marriage involving a great deal of physical violence," the proof also "clearly revealed that there [had] been no allegations of any type of violence since the couples' divorce in 1987." As for Cynthia McCann's alleged sexual indiscretions, the trial court noted that, with one exception, all of these acts "occurred more than ten years ago and prior to her marriage to Mr. McCann" and, further, that "[a]ll of the alleged incidents were emphatically denied by Mrs. McCann." In subsequently granting the McCanns' petition, the trial court specifically found that the adoption was in the children's best interests.

In adoption proceedings, our standard of review is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the [trial court's findings of fact], unless the preponderance of the evidence is otherwise." *Sonet v. Unknown Father of Hasty*, 797 S.W.2d 1, 5 (Tenn. App. 1990); T.R.A.P. 13(d). Where conflicting evidence is presented at trial as to the best interests of the children, the trial court's findings are entitled to great weight. *Sonet*, 797 S.W.2d at 5. After a careful review of the record in this case, we conclude that the evidence does not preponderate against the trial court's finding that adoption by the McCanns was in the children's best interests.

In affirming the final adoption order, we reject the Grandmother's contention that the trial court erred in admitting the testimony of the DHS employees on the grounds that their testimony was based on hearsay and that they had not been qualified as experts. In order to preserve an evidentiary error for appellate review, a party is required to object to the evidence at the time of its admission at trial. *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 n.10 (Tenn. 1996); T.R.E. 103(a)(1). During the DHS employees' testimony, the Grandmother failed to raise a single hearsay objection to their testimony. The Grandmother also failed to challenge the employees' testimony on the ground that they had not been qualified as experts. The only objection raised by the Grandmother related to the home study reports which the McCanns sought to introduce into evidence, and the trial court sustained this objection on the ground that the home studies

---

T.C.A. § 36-1-123(a) (1991).

constituted inadmissible hearsay. *See McKeehan v. McKeehan*, No. 02A01-9407-CV-00165, 1995 WL 695124, at **2-3 (Tenn. App. Jan. 11, 1996) (excluding guardian *ad litem* report as inadmissible hearsay). Under these circumstances, we conclude that the Grandmother has waived this issue for purposes of appellate review.

We likewise reject the Grandmother's attack on the validity of the Mother's surrenders by which she relinquished her parental rights to the children. Although the Grandmother raised this issue in her statement of the issues presented for review, the argument portion of the Grandmother's brief fails to set forth her contentions with respect to this issue. Accordingly, the Grandmother has waived this issue for purposes of appellate review. *See Blair v. Badenhope*, 940 S.W.2d 575, 576-77 (Tenn. App. 1996); T.R.A.P. 27.

Even if this issue were properly presented for this court's review, we would reject it because the record reflects that the Mother has never revoked the surrenders. The Mother initially executed surrenders which relinquished her parental rights to the children in favor of the Bartow County Department of Family and Children Services in Georgia. An order entered by the Juvenile Court of Bartow County in October 1994 indicates that the Mother attempted to revoke these surrenders but that she did not do so within the time permitted by Georgia law. In entering its October 1994 order, therefore, the Georgia court ruled that the initial surrenders remained valid and unrevoked. This ruling remained undisturbed when the Georgia court entered its order awarding custody of the children to the McCanns in December 1994.

The Mother also executed surrenders relinquishing her parental rights to the children in favor of the McCanns. Even if these surrenders were effective to relinquish the Mother's parental rights,[3] we note that the Mother likewise has not revoked these surrenders in accordance with Tennessee law. Under the adoption laws in effect at the time the Mother executed the surrenders, the Mother had the absolute right, provided a petition to adopt had not been filed, to revoke the surrender within fifteen days from the date of execution by appearing in the trial court and presenting

---

[3]The Georgia court ruled that these surrenders were ineffective to surrender the Mother's parental rights because, by virtue of the Mother's prior execution of surrenders in favor of the Department of Family and Children Services, the Mother had no parental rights to surrender.

the court with a written revocation of surrender. T.C.A. § 36-1-117(b) (1991). Once a petition to adopt was filed, the Mother's right to revoke the surrender was not absolute, but was subject to the trial court's determination of what was in the best interests of the children. T.C.A. § 36-1-117(e)(1) (1991). Upon entry of a final adoption order, the Mother's right to revoke the surrender was governed by rule 60.02 of the Tennessee Rules of Civil Procedure. In order to set aside an adoption order under this rule, the Mother would be required to present clear and convincing evidence of the grounds for vacating the order, such as that the surrenders were obtained by fraud or undue influence. *In re Bishop*, 678 S.W.2d 471, 472 (Tenn. App. 1984); T.R.C.P. 60.02(2).

In the present case, the Mother executed the surrenders relinquishing her parental rights to the children in favor of the McCanns in April 1994. The Mother did not seek to revoke the surrenders until August 1995, more than one year later, when she filed a motion to join in the Grandmother's petition opposing the adoption of the children. This attempt to revoke the surrenders was untimely because it was not filed within fifteen days of the Mother's execution of the surrenders as required by statute. T.C.A. § 36-1-117(b) (1991). Moreover, the Mother's motion to intervene was ineffective to revoke the surrenders because the trial court subsequently dismissed the Mother's motion when her attorney represented to the court that she had changed her mind and no longer wished to oppose the adoption. Although the Mother's deposition revealed that she wished to revoke the surrenders, the record indicates that she made no further attempts to do so.[4] Inasmuch as the Mother has failed to effectively revoke the surrenders, and inasmuch as the Grandmother has no standing to assert the Mother's parental rights,[5] we conclude that this issue is without merit.

The trial court's judgment is affirmed and this cause remanded for further

---

[4]We also note that the Mother has not revoked the surrenders in accordance with Tennessee's current adoption laws, which permit a parent to revoke the surrender within ten days of execution by appearing in court and revoking the surrender under oath. T.C.A. § 36-1-112(a)(1) (1996). After the expiration of this ten-day period, a parent's right to revoke the surrender is limited by subsection (d). T.C.A. § 36-1-112(a)(1)(F)(I) (1996). Although subsection (d) permits a surrender to be set aside upon clear and convincing evidence of duress, fraud, intentional misrepresentation, or other specified invalidities, any action to revoke a surrender under subsection (d) must be initiated within thirty days of the surrender's execution. T.C.A. § 36-1-112(d) (1996).

[5]*See Clark v. Buttry*, 174 S.E.2d 356, 358 (Ga. Ct. App.), *aff'd*, 177 S.E.2d 89 (Ga. 1970); *In re Adoption of A.S.S.*, 907 P.2d 913, 918-19 (Kan. Ct. App. 1995); *Webb v. Wiley*, 600 P.2d 317, 319 (Okla. 1979).

proceedings. Costs of this appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)